**FLAGSTAFF LIQUOR COMPANY**

v.

**UNITED STATES.**

**C.D. 4563; Court No. 71–12–02057.**

United States Customs Court.

Oct. 31, 1974.

**556**

Wilentz, Goldman & Spitzer, Perth Amboy, N. J. (Steven T. Kessel, Perth Amboy, N. J., of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Gilbert Lee Sandler, New York City, trial atty.), for defendant.

NEWMAN, Judge:

Defendant has moved for summary judgment and dismissal of this civil action, brought pursuant to 28 U.S.C. § 2632(a) (1970).

Plaintiff, a wholesaler of domestic and imported wines, spirits and alcoholic beverages, imported from Great Britain 3,660 cases of "Beefeater Dry Gin", which were entered for warehousing at the New York region subport at Perth Amboy, New Jersey on December 17, 1968. The 3,660 cases were assessed with duty under the provision for "gin" in item 168.35 of the Tariff Schedules of the United States, and additionally were assessed with an internal revenue tax as "distilled spirits" under the provisions of 26 U.S.C. § 5001(a) (1964).

Plaintiff claims that the duty and tax were assessed on too great a quantity of merchandise; the rates of duty and tax are not in dispute. Specifically, plaintiff contends that pursuant to 26 U.S.C. § 5008(a) (1964) it is entitled to a refund of the duty ($2,470.50) and tax ($28,822.50) assessed on 915 cases because they were stolen from its bonded warehouse in Perth Amboy, New Jersey, allegedly "without [the] connivance, collusion, fraud, or negligence" of the importer, its employees or agents. Plaintiff also demands a judgment for interest, attorney's fees and costs of the suit.

Defendant's motion for summary judgment and dismissal of the action is grounded on the contention that the court lacks jurisdiction for the reason that plaintiff failed to file a protest within sixty days after liquidation in accordance with 19 U.S.C. § 1514 (1964).[1]

---

1. 19 U.S.C. § 1514 reads as follows:

"Except as provided in subdivision (b) of section 1516 of this title (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto.

Plaintiff concedes that it failed to file its protest within sixty days after liquidation; but opposes defendant's motion, contending that defendant is "barred" from raising the statute of limitations under section 1514 "by virtue of the fact that an agent of the government misrepresented material facts and induced plaintiff into not pursuing its statutory right to relief within the time limits specified by law".

I have concluded that defendant's motion should be granted.

1.

The record comprises the official papers forwarded to the court by the Regional Commissioner pursuant to 28 U. S.C. § 2632(f) (1970) and rule 3.2(f); the pleadings; an affidavit executed by Stephen Rineberg, plaintiff's vice president, submitted in opposition to defendant's motion; and an affidavit by Joseph A. Farrell, Port Director for United States Customs at Perth Amboy, New Jersey, submitted by defendant in response to Rineberg's affidavit.

The following material facts are not in dispute:

This case concerns entry number PA-199, dated December 17, 1968, which covered 3,660 cases of gin. It appears that 915 of the cases were stolen from plaintiff's premises while under bond on December 23, or 24, 1968. The theft was reported by plaintiff to the appropriate customs officials on December 24, 1968. In subsequently liquidating the entry on July 2, 1969, the Regional Commissioner made no allowance in duty or tax for the 915 stolen cases. Plaintiff failed to file a protest against such liquidation within sixty days thereafter, as prescribed by 19 U.S.C. § 1514.

On April 27, 1970, or 299 days after liquidation, plaintiff filed a claim for a refund of taxes (Internal Revenue Form 843), citing 26 U.S.C. § 5008(a) and asserting: "Claim for refund is made pursuant to 26 U.S.C. Sec. 5008(a). The tax was erroneously paid by the taxpayer because of inadvertence and ignorance of the applicable laws and regulations. The tax should not have been paid because the merchandise was lost by theft without the connivance, collusion, fraud or negligence of the taxpayer or its employees or agents. The loss has not been indemnified against or recompensed by the responsible insurance carriers though claim for same has been made".

On June 1, 1970, or 334 days after liquidation, plaintiff filed an application for an allowance in duty for theft (Customs Form 4315).

The above-mentioned claim and application were denied by the Regional Commissioner in a letter to plaintiff dated April 12, 1971 on the ground that no protest had been filed within sixty days after liquidation pursuant to section 1514. In that letter, the Regional Commissioner further advised plaintiff: "The importer (Flagstaff Liquor Co.), or their authorized agent may protest this decision by filing a protest on Customs Form 19 in quadruplicate within ninety (90) days after the date of this letter in accordance with Section 1514(a)(7), Title 19, United States Code".

Within ninety days of the Regional Commissioner's letter (June 17, 1971), plaintiff filed a protest against the denial of its claims for refund of duty and tax. The protest was denied on July 16, 1971 on the basis that the Regional Commissioner's original decision was found to be correct. Moreover, the Regional Commissioner commented that plaintiff's claim was "[n]ot correctible under Section 1520(c)(1) Title 19 USC".

Thereafter, on December 14, 1971 plaintiff filed a summons initiating this action against the denial of its protest of June 17, 1971.

The reliquidation of any entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation."

### 2.

Plaintiff concedes it is not entitled to relief pursuant to section 1520(c) for "clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law." As previously mentioned, plaintiff further admits that it failed to file its protest within sixty days after the liquidation, as required by 19 U.S.C. § 1514. However, plaintiff insists that defendant should be "barred" from asserting such sixty day statute of limitations under section 1514 because the failure to file a timely protest was due to "misrepresentations" by a customs official. Hence, while not articulated as such, it is clear that plaintiff relies upon the familiar doctrine of equitable estoppel.

### 3.

At this juncture, it should be pointed out that the alleged "misrepresentations" were made during a conversation between Mr. Rineberg, plaintiff's vice president, and Mr. Farrell, the Port Director at Perth Amboy, New Jersey. As noted, the affidavits of both Rineberg and Farrell are part of the record in these proceedings.

The conversation between Rineberg and Farrell occurred at plaintiff's premises on December 24, 1968 as a consequence of plaintiff's discovery in the morning that a container holding 915 cases of the imported gin had been stolen. Previously, Rineberg had transacted customs business with Farrell, and the latter impressed Rineberg as "a person who exercised considerable authority with respect to the operations of the Port of Perth Amboy, and a person who was knowledgeable in the area of customs and import regulations" (Rineberg affidavit, paragraph 5).

Rineberg related to Farrell the then known facts concerning the theft of the gin, and "asked Mr. Farrell to explain Flagstaff's obligations to the United States Government with respect to the missing cases of gin" (Rineberg affida-

vit, paragraph 7). Continuing, Rineberg averred that the "misrepresentations" of Farrell, which allegedly deterred plaintiff from filing a timely protest, are as follows: (1) "Flagstaff was under an absolute duty to pay both alcohol excise tax and customs duties on the missing cases of gin" (paragraph 8); (2) "the United States Government would proceed against Flagstaff's warehouse operator and/or carrier's bond in the event that Flagstaff failed to or refused to make payment" (paragraph 9); (3) "if the United States proceeded against said bonds, Flagstaff's position as an approved bonded warehouse operator and carrier would be jeopardized" (paragraph 10); and (4) "Farrell [did not] advise me that I had a statutory right to protest the payment of taxes or duties" (paragraph 13).

Rineberg further argues: "[I]t appeared that the obligation to pay such taxes and duties was absolute and not subject to any challenge or discretionary action on the part of any government official" (paragraph 12); and "Mr. Farrell's statements and those of the Customs House to me led me to believe that not only was Flagstaff obligated to pay said taxes and duties but that Flagstaff had no recourse to challenge Mr. Farrell's assertions" (paragraph 17).

It also appears from Rineberg's affidavit that it was not until March 1970 that plaintiff consulted its attorneys, and "was advised that it was conceivable that there existed a statutory right to make claims for refund of the customs duties and alcohol excise taxes paid on the missing 915 cases of gin" (paragraph 15).

In summary, as expressed in its brief: "[P]laintiff was misled into believing that it must pay the contested taxes and duties, that to dispute said taxes and duties would result in serious adverse consequences to plaintiff, and that in any event, there existed no procedure by which a contest could be made".

I have determined, however, that as a matter of law the averments in Mr. Rine-

berg's affidavit do not establish any basis for an equitable estoppel predicated upon misrepresentation.

4.

First, plaintiff has failed to show wherein any of the statements attributed to Farrell were either erroneous or misleading. On the contrary, they appear to be substantially accurate.

As of December 24, 1968, when the conversation occurred, there had been no administrative or judicial determination to abate the duty and tax on the stolen cases of gin, and thus at that time plaintiff was indeed "under an absolute duty" to pay duty and tax on the 915 cases of gin. And although the subject of protesting the assessment did not arise in the conversation, it is of course fundamental that payment of liquidated duties and taxes was a condition precedent to filing a protest and to confer jurisdiction in this court. The A. W. Fenton Co., Inc. v. United States, 55 CCPA 54, C.A.D. 933 (1968); Marvin Schnitzer Machinery Co. v. United States, 62 Cust.Ct. 71, C.D. 3680 (1969); Korlis, Ltd. v. United States, 56 Cust.Ct. 365, C.D. 2660 (1966); A. Zerkowitz & Co., Inc. v. United States, 48 Cust.Ct. 437, Abs. 66724 (1962); A. Zerkowitz & Co., Inc. v. United States, 48 Cust.Ct. 438, Abs. 66725 (1962); A. Zerkowitz & Co., Inc. v. United States, 48 Cust.Ct. 439, Abs. 66726 (1962); Samoca Distributing Co. v. United States, 48 Cust. Ct. 392, Abs. 66633 (1962). Indeed, had plaintiff withheld payment of duty and tax for the stolen merchandise, upon which no allowance had been made, there can be little doubt that in due course the Government would have proceeded against plaintiff's bonds.

Whether plaintiff's status as a bonded cartman and warehouseman would have been "jeopardized", while somewhat conjectural, is not a "misrepresentation". In this connection, it may be noted that licenses to operate as a bonded warehouseman or cartman are revocable for "reasonable cause", and particularly for negligence or carelessness in the handling of goods. See 19 CFR §§ 19.3(c) and 21.8(a) (1967).

Second, there is no averment in Rineberg's affidavit that Farrell stated that plaintiff had no right to file a protest. Rather, plaintiff relies upon Farrell's silence concerning plaintiff's statutory right to file a protest pursuant to section 1514. The general rule is: "estoppel by silence" does not ordinarily arise where there is no affirmative duty to speak. See 31 C.J.S. Estoppel § 87, p. 485; 53 C.J.S. Limitations of Actions § 25, p. 964. Significantly, it is well settled that customs officials are not required to advise importers as to the nature and extent of their rights.

In Wilmington Shipping Company v. United States, 52 Cust.Ct. 642, A.R.D. 174 (1964), aff'd, 52 CCPA 89, C.A.D. 864 (1965), the appeals for reappraisement were dismissed for untimeliness in that they were prematurely filed before appraisement. In opposition to defendant's motion to dismiss the appeals for untimeliness, plaintiff relied upon conversations between its customhouse broker and the customs officials, whereby the latter erroneously advised the former that the appraisement had been made on a particular date (October 28, 1960) at the values set forth in the appraiser's written notice of probable unpaid duties. Such notices advised the plaintiff that the appraiser *contemplated* appraisement at certain increased values; but in point of fact and law, appraisements were not completed until a later date (November 10, 1960) when notices of appraisement were mailed to plaintiff.

In affirming the decision and judgment of the trial court dismissing the appeals as prematurely filed, the appellate term held (52 Cust.Ct. at 649):

It is regrettable that customs officials told plaintiff's agent that the merchandise had been appraised on October 28, 1960, and advised him to file appeals for reappraisement at that time. However, written notices of appraisement were sent to plaintiff when the appraisement was completed, and plaintiff could then have investi-

gated and could then have filed timely appeals. *It is well settled that customs officials are not required to advise importers as to the nature and extent of their rights.* Jacksonville Paper Co. v. United States, 30 CCPA 159, C.A.D. 228; F. B. Wilcon v. United States, 13 Cust.Ct. 96, C.D. 876; United States v. Kenneth Kittleson and E. W. Rollow, 43 CCPA 31, C.A.D. 605. In the *Jacksonville* case, the court said:

> That the importer was "influenced" by the officials to make the entry seems to be true, and the importer's agents evidently obtained the impression that such entry was "required" as a condition precedent to obtaining the merchandise, but it could not have been legally "required," and had importer tendered proper bond all its statutory rights could have been preserved by its following the defined statutory procedure. [Pp. 164, 165.]

There are certain legal precepts that may not be overlooked. It is well settled that there is no inherent right to sue the United States, that such right is permissible, and that a suit against the United States can be maintained only pursuant to the terms laid down in the grant of permission. Congress may attach to its consent to sue such conditions as it deems proper. Reid v. United States, 211 U.S. 529 [29 S.Ct. 171, 53 L.Ed. 313]; United States v. Loeb & Schoenfeld Co., 7 Ct.Cust.Appls. 380 T.D. 36961; ex parte Bakelite Corporation, 279 U.S. 438 [49 S.Ct. 411, 73 L.Ed. 789]; Munro v. United States, 303 U.S. 36 [58 S.Ct. 421, 82 L.Ed. 633]; and others.

> Appellant has failed to bring itself within the statutory grant of permission conferred by section 501. [Emphasis added.]

Additionally, it must be observed from Rineberg's affidavit that the affiant asked Farrell to explain plaintiff's "obligations" to the Government and not its "rights" (paragraph 7). Hence, for this additional reason I see no justification for holding that Farrell was obliged to advise Rineberg that plaintiff could protest the assessment.

Third, plaintiff was not reasonably misled concerning its right to file a protest. Here, it may be stressed that plaintiff is an experienced importer who retained a customhouse broker to make entries (Dorf International, Ltd.), and plaintiff also is a licensed bonded warehouseman and cartman.

Fundamentally, in the law of estoppel, one claiming to have been misled through lack of knowledge of certain facts must have been without convenient or ready means of acquiring such knowledge, and must have exercised reasonable diligence to acquire knowledge of the true facts. "If he conducts himself with a careless indifference to means of information reasonably at hand * * * he cannot invoke the doctrine of estoppel". 31 C.J.S. Estoppel § 71, p. 435. It has also been stated: "[I]n order to serve as the basis of such an estoppel [to plead the statute of limitations], the fraud must be of a character to prevent inquiry, to elude investigation, or otherwise to mislead the party having the cause of action, and in this connection it has been held that plaintiff is under a duty to exercise reasonable care and diligence". 53 C.J.S. Limitations of Actions § 25, p. 965.

Unfortunately plaintiff, who now professes to have been greatly concerned on December 24, 1968 about its right to protest the assessment of duty and tax on the stolen gin, apparently did not consult either its broker (Dorf) or its attorneys respecting the matter until March 1970, nearly fifteen months after the theft. Apropos, therefore, are the following observations of our appellate court concerning an importer's duty to protect its rights in Jacksonville Paper Co. v. United States, 30 CCPA 159, 164, C.A.D. 228 (1943), cert. denied, 320 U.S. 737, 64 S.Ct. 36, 88 L.Ed. 436 (1943):

> The importer unfortunately did not see fit to confer with counsel and receive advice as to his legal rights be-

fore making the entries and *it was a mistake on the part of Mr. McGehee to assume that it was the duty of the customs officials fully to advise him.* They could not, of course, have bound the Government by advising him nor was the importer bound by their statements. *It was the duty of importer to protect its legal rights,* which, as the trial court pointed out, it readily might have done by making a test case of the April, 1936, entry. [Emphasis added.]

Finally, even assuming *arguendo* that Farrell gave Rineberg wrong advice which reasonably misled plaintiff into not filing a timely protest, as a matter of law the doctrine of equitable estoppel may not be invoked against the United States under such circumstances.

In *Wilmington Shipping Company*, the Government was not barred from asserting that plaintiff's appeals for reaping the untimely appeals upon the erropraisement were prematurely filed notwithstanding plaintiff's reliance in filneous advice of the customs officials.

A long line of authorities in other federal courts have rejected the application of equitable estoppel against the United States, despite the fact that misinformation or erroneous advice of the Government's agents or employees deterred the plaintiffs from filing timely actions. "[I]t is well established that the government is not estopped by such acts of its agents as the giving of improper advice". Rock v. United States, 279 F.Supp. 96, 101 (S.D.N.Y.1968).

In a "rider" attached to its summons, plaintiff contends that the "dictates" of Mr. Farrell were "beyond his authority". But "[l]ack of authority is fatal to a claim of estoppel based upon the conduct of an agent. All who deal with any agent of the United States are charged with notice of his lawful authority". United States v. Certain Parcels of Land, 131 F.Supp. 65, 73 (S.D.Cal.1955). "The law is also well established that the United States, as a sovereign, cannot

be estopped by unauthorized acts of its agents or employees". Jackson v. United States, 234 F.Supp. 586, 588 (E.D.S.C.1964). "And when statutes of limitations are fixed by Congress they may not be lengthened by estoppel or waiver by agents of the United States". Kindrew v. United States, 352 F.Supp. 277, 278 (M.D.Fla.1972), aff'd, 479 F.2d 49 (CA 5, 1973).[2]

Applicable here are the following comments of the District Court in *Kindrew* (352 F.Supp. at 278):

> The Plaintiff's own lack of diligence in purposefully pursuing the cause within the required statutory period results in a forfeiture of the cause of action. This plightful ending was precisely described in Martin v. Grace Line, Inc., *supra*:
>
>> "Such unfortunate results will probably occur so long as there are statutes of limitations. However, statutes of limitations exist to protect other important interests, which must also be accommodated."

In Ritter v. United States, 19 F.2d 251 (W.D.Pa.1927), aff'd, 28 F.2d 265 (CCA 3, 1928), the Government was held not estopped to raise plaintiff's failure to file a written claim for a refund of an overpayment of income tax within the statutory time limit, notwithstanding the fact that a revenue field agent misled plaintiff into believing that an oral claim made to him at the audit was sufficient compliance with the applicable statutes and regulations. There, the Circuit Court of Appeals stated (28 F.2d at 267):

> * * * It is unfortunate and to be regretted that the plaintiff finds himself in the position in which his negligence, misunderstanding, or the unauthorized statement of the field agent, Timberlake, places him, but the sovereign government may not be sued, except upon its consent, and then only upon the conditions under which it has consented to be sued, even though they be purely formal. * * *

---

2. To the same effect see Kruhmin v. United States, 177 F.2d 906, 907 (CA3, 1949).

In *Jackson,* the District Court held, in an action under the Federal Tort Claims Act, that the Government was not estopped from raising the two year statute of limitations where the failure of the incompetent plaintiff's son to file a timely action on behalf of the plaintiff was the result of certain unauthorized statements of a Government officer.

Further, in Taylor v. Flemming, 186 F.Supp. 280 (W.D.Ark.1960), plaintiff failed to file proof of support within the time specified by statute, which proof was a condition precedent to recovery of dependent parent's insurance benefits under the Social Security Act. The District Court held that the Government was not estopped to assert plaintiff's ineligibility for benefits, although plaintiff had relied upon erroneous information given her on inquiry at a social security office prior to the expiration of the time for filing proof of support. The court commented (186 F.Supp. at 284):

> As noted above, the plaintiff contends that she made an inquiry at the Social Security Office in Sacramento, California, concerning the proof of support prior to July 31, 1951, and she was informed that she did not have to file such a proof. In plaintiff's brief her attorney argues as follows:
>
> "Since the United States Government can act only through its agents, it would be shocking to allow the United States Government to misinform an individual as to her rights, and then absolve itself from an obligation to that individual because of her reliance upon the misinformation."
>
> It is apparent that plaintiff is attempting to assert some type of estoppel against the defendant; however, no cases are cited in support of this position. If Mrs. Taylor did rely to her detriment upon such a statement, it is indeed unfortunate. However, the Government cannot be estopped from insisting upon performance of statutory conditions precedent by the unauthorized acts of an employee of a local Social Security Office. * * *

Similarly, in Flamm v. Ribicoff, 203 F.Supp. 507 (S.D.N.Y.1961), the Government was held not to be estopped from raising the defense of plaintiff's failure to comply with the statutory requirements for recovery of social security benefits despite the circumstances that the social security office gave "misinformation" concerning the time when application for benefits should have been filed. The court stated (203 F.Supp. at 510):

> Secondly, plaintiff claims that "misinformation" was given to Mrs. Berger's son-in-law over the telephone in July 1956 by an employee of the midtown Social Security office and that she delayed the filing of her written application until December 1958 in reliance thereon. She urges that defendant is therefore estopped by the acts of the Government employee from raising the defense of failure to comply with the statute and regulations so as to limit her benefits to one year prior to the filing of her 1958 application.
>
> It is by no means clear that Mrs. Berger's son-in-law was in fact misinformed by the Social Security office and that what he received from that office was not merely sound advice that the claimant should have accurate information available as to her date of birth. But even assuming that he did receive "misinformation" on which Mrs. Berger acted to her detriment, it is plain that estoppel will not lie against the Government under these circumstances. *Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees.* Failure to comply with the applicable statute and regulations precludes recovery against the Government "no matter with what good

reason" the claimant believed she had come within the requirements. *Estoppel will not lie regardless of the financial hardship "resulting from innocent ignorance."* Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; Walker-Hill Co. v. United States, 162 F.2d 259 (7 Cir. 1947), cert. den. 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356; James v. United States, 185 F.2d 115, 22 A.L.R.2d 830 (4 Cir. 1950). [Emphasis added.]

Again, in Commissioner of Internal Revenue v. Duckwitz, 68 F.2d 629 (CCA 7, 1934), the Circuit Court of Appeals affirmed the holding of the Board of Tax Appeals rejecting the taxpayer's contention as to estoppel of the Government to claim a deficiency income tax because of the careless and unofficial expression of opinion by the solicitor in the Bureau of Internal Revenue.

Other cases wherein the courts have held that estoppel is inapplicable against the United States where the statute of limitations has run are: Claremont Aircraft, Inc. v. United States, 420 F.2d 896, 898 (CA 9, 1970); Legerlotz v. Rogers, 105 U.S.App.D.C. 256, 266 F.2d 457, 459 (1959), cert. dismissed, 362 U. S. 938, 80 S.Ct. 803, 4 L.Ed.2d 768 (1960); Bono v. United States, 113 F.2d 724, 725 (CCA 2, 1940). See also Taxation: Reliance on advice of Government officials. 33 Cornell Law Quarterly 607, 612, which concludes: "In short, equitable estoppel is but rarely successfully invoked by a taxpayer against the Government".

Plaintiff relies heavily upon Scarborough v. Atlantic Coast Line R. Co., 202 F.2d 84 (CA 4, 1953), and Fravel v. Pennsylvania R. Co., 104 F.Supp. 84 (D. Md.1952), wherein both courts held that fraud barred the defendant railroads from relying upon the statute of limitations under the Federal Employers' Liability Act. Plaintiff's reliance on those cases is misplaced, inasmuch as in each case the defendant was a private party and not the United States. No decision is cited by plaintiff wherein a statute of limitations for actions against the United States was tolled, or the principle of equitable estoppel applied, on the ground that the plaintiff received erroneous advice from a Government official.

Accordingly, it is plain that the doctrine of equitable estoppel is inapplicable in this case, and that defendant is not barred from raising the statute of limitations as a defense.

5.

■ As previously mentioned, plaintiff seeks a refund of both the *duty* and internal revenue tax assessed upon the stolen gin. However, 26 U.S.C. § 5008(a), upon which plaintiff predicates its right to relief, mentions only internal revenue tax.[3]

In Chicago Heights Distributing Company v. United States, 55 Cust.Ct. 254, C.D. 2586 (1965), imported Scotch whiskey was stolen while in the custody of a bonded cartman, who was acting as the importer's agent in transferring the merchandise from the place of unlading to the importer's bonded warehouse. The question before the court was whether the plaintiff was entitled to a refund of customs duties and internal revenue taxes assessed upon the merchandise in liquidation. Plaintiff urged that it was entitled to an abatement of duties and taxes assessed against the stolen merchandise because the theft occurred without negligence, on the part

---

3. 26 U.S.C. § 5008(a) provides so far as pertinent:

"(a) Distilled spirits lost or destroyed in bond.—

(1) Extent of loss allowance.—

No tax shall be collected in respect of distilled spirits lost or destroyed while in bond, except that such tax shall be collected—

(A) Theft.—

In the case of loss by theft, unless the Secretary or his delegate finds that the theft occurred without connivance, collusion, fraud, or negligence on the part of the proprietor of the distilled spirits plant, owner, consignor, consignee, bailee, or carrier, or the employees or agents of any of them * * *".

of the cartman, relying upon 19 U.S.C. § 1001, paragraph 813 and 26 U.S.C. § 5011 in support of its contention. Defendant argued that there were no provisions of the customs or internal revenue laws authorizing abatement of duties and taxes, as claimed by plaintiff, and that even if there were such laws, the negligence of the cartman precluded abatement as a matter of law.

Respecting abatement of *duties*, the court commented (55 Cust.Ct. at 257–258):

 \* \* \* It appears that no statutory provisions have been made for the abatement of duties for a theft of imported merchandise not occurring while the merchandise is in the appraiser's stores (see 19 U.S.C.A., section 1563). "Congress has not provided that the Government shall be an insurer of imported goods while in customs custody . . . ," Mills & Gibb Corporation v. United States, 13 Ct.Cust.Appls. 72, 74, T.D. 40933. A broader provision for such relief does exist, however, with respect to abatement of *internal revenue taxes* by reason of the theft of distilled spirits under 26 U.S.C.A., section 5008 (section 5008, Internal Revenue Code of 1954, as amended).

 \*   \*   \*   \*   \*   \*

 *We do not think that section 5008 is applicable, however, to customs duties as claimed by plaintiff perforce of paragraph 813.* \* \* \* [emphasis added.]

Consequently, insofar as the *duty* aspect of this case is concerned, 26 U.S.C. § 5008(a) does not confer any jurisdiction upon this court to grant relief. Respecting plaintiff's application for allowance in duty (Customs Form 4315) filed on June 1, 1970 and denied on April 12, 1971, the provisions of 19 U.S.C. § 1563(a) (1964) were applicable.[4] In Camilo E. Rosello, Inc. v. United States, 63 Cust.Ct. 454, C.D. 3935 (1969), plaintiff filed with the Collector of Customs an application on Customs Form 4315 for a refund of duties paid on an importation of plywood destroyed in a fire. The application was denied by the Collector, and following the liquidation of the entries, plaintiff protested the decision. With reference to section 1563(a), the court stated (63 Cust.Ct. at 456):

 And as for relief under subsection (a) of section 1563 the court is powerless to review any determination of the Secretary of the Treasury made thereunder even if plaintiff has brought itself within the ambit of that statute. The decision of the Secretary of the Treasury under that statute with respect to duty refunds is final and conclusive upon all persons and not subject to review by or in this court. Delia Failde v. United States, *supra*, [51 Cust.Ct. 170, Abs. 67894 (1963).] Under the circumstances, the protest herein is overruled.

See also: Armour and Company v. United States, 29 Cust.Ct. 296, C.D. 1482 (1952); Battat Imp-Export Co., Inc. v. United States, 43 Cust.Ct. 397, Abs. 53502 (1959).

Plainly, then, insofar as plaintiff seeks judicial review of the Government's denial of its application for an allowance in duty, this court would lack jurisdiction, even assuming a timely protest were filed.

---

4. 19 U.S.C. § 1563(a), on which plaintiff's application for a duty allowance (Customs Form 4315) was apparently based, reads in relevant part as follows:

 "(a) In no case shall there be any abatement or allowance made in the duties for any \* \* \* loss \* \* \* sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, \* \* \* to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated \* \* \*. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons".

**6.**

The decision of the Regional Commissioner regarding the quantity of gin upon which duty and tax would be assessed (and to include the stolen gin in the dutiable quantity) merged in the liquidation, and became final and conclusive upon all parties under 19 U.S.C. § 1514, since no protest was filed within sixty days of liquidation. Clover Linen Corporation v. United States, 26 Cust.Ct. 275, C.D. 1335 (1951); Parrott & Co., Frank P. Dow Co., Inc. v. United States, 30 Cust.Ct. 133, C.D. 1511 (1953). See also United States v. Westco Liquor Products Co., 38 CCPA 101, 107, C.A.D. 446 (1951). Accordingly, defendant is entitled to summary judgment and dismissal of this action as a matter of law, and its motion is hereby granted.