## UNITED STATES v. UNION METALLIC CARTRIDGE CO. et al.

(District Court, D. Connecticut.  April 21, 1920.)

1. **Customs duties ⟋100—Drawback paid on false statements may be recovered back.**

   Under Act Oct. 1, 1890, § 25, providing for a drawback on exported goods manufactured from imported materials, and providing that the imported materials shall be identified, and their quantity and the amount of duties paid ascertained, etc., the government is not required to keep a customs official in the factory, so as to have the imported material under continuous observation, but may rely upon sworn statements of the exporter, and when, in reliance on false statements, it makes payments, they may be recovered.

2. **Customs duties ⟋100—In action to recover back drawback, noncompliance with regulations sufficiently alleged.**

   Where, in an action to recover back drawback paid on exported goods in reliance on false statements, the complaint alleged that the Secretary of the Treasury promulgated regulations requiring the keeping of accurate and true accounts of all imported materials, and that no true records were kept, there was a sufficient allegation of failure to comply with the regulations.

3. **Customs duties ⟋100—Transferee of exporter, assuming latter's obligations, may be sued by government for drawback.**

   Where an exporter, in reliance on whose false statements the government paid a drawback, transferred all of its assets to another company, which assumed its obligations, the government could sue the transferee to recover back the drawback.

4. **Customs duties ⟋100—Complaint to recover back drawback held not to show estoppel or laches.**

   In an action to recover back drawback paid on exported goods in reliance on false statements as to the use of imported materials, complaint *held* not to show on its face that the United States was estopped from recovering or guilty of laches.

5. **Action ⟋50(4)—In action to recover back payment from payee, and his transferee assuming obligations, there was no misjoinder.**

   Under Practice Book Conn. 1908, pp. 32, 34, 35, §§ 613, 618, 622, and pages 238, 245, §§ 120, 150, of the rules therein, there was no misjoinder of causes or parties in an action against an exporter, and a transferee of

⟋For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its assets, who assumed its obligations, to recover back drawback paid in reliance on the exporter's false statements as to the use of imported materials.

**6. Pleading ⚖═367(2)—Information necessary to preparation of defenses should be obtained by bill of particulars.**

Information necessary to enable defendants to prepare their defenses should be obtained by a bill of particulars, and not by motions to require plaintiff to amend.

At Law. Action by the United States against the Union Metallic Cartridge Company and another. On demurrers to the complaint. Demurrers overruled.

John F. Crosby, U. S. Atty., of Hartford, Conn., and Frank E. Carstarphen, Special Asst. Atty. Gen. (Frank E. Carstarphen, Charles K. Allen, and John Hanson Kennard, all of New York City, of counsel), for the United States.

Gerry & Wakefield, of New York City (Gross, Gross & Hyde, of Hartford, Conn., of counsel), for defendants.

GARVIN, District Judge. Each defendant demurred to the complaint, which is in three counts, setting forth facts upon which plaintiff claims that both defendants are liable—the defendant Remington Arms Union Metallic Cartridge Company (hereinafter referred to for convenience as the Remington Company), a corporation, because it has assumed the liabilities of the other defendant corporation, the Union Metallic Cartridge Company (hereinafter called the Union Company).

The first count is based upon payments of $355,553.45, "drawbacks" of custom duties, made by plaintiff to the Union Company under mistake of fact, induced by misrepresentations of that company; the second, upon similar payments of smaller sums, made to the M. Hartley Company, a corporation, and Marcellus Hartley Dodge, its successor, under mistake of fact, induced by misrepresentations of the Union Company; and the third, upon like payments made to Hartley & Graham under the same circumstances. The payments set forth in the second and third counts are included in the amount covered by the first count.

More in detail, the complaint set forth in the first count thereof that certain acts of Congress were in force which provided in substance that the imported material used in the manufacture or production of articles entitled to "drawbacks" of customs duties, where exported, should, in all cases where a "drawback" of duties paid on such materials was claimed, be identified, the quantity of such materials used and the amount of duties paid thereon be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom should be determined, and the "drawback" due thereon should be paid to the manufacturer, producer, or exporter, pursuant to such regulations as the Secretary of the Treasury should prescribe; that said Secretary did promulgate regulations requiring such manufacturer to keep accurate and true ac-

---

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

counts of all imported material and of all articles manufactured therefrom for export at the place or factory where manufactured; that no such true record of imported material and the articles manufactured therefrom for export with benefit of "drawbacks" was kept by the manufacturer of the cartridge covered by the applications for drawback to which reference will be made.

The count further alleges that from 1894 to 1915, inclusive, the Union Company applied to and obtained from the plaintiff large sums of money, claiming that said company was entitled to receive the same as "drawbacks" upon certain exportations of cartridges containing imported lead, upon which lead customs duties had been paid to plaintiff; that plaintiff was induced to make such payments by representations made to plaintiff that said lead used in said cartridges was the identical lead upon which customs duties on the importation thereof had been paid to plaintiff, and that true and accurate records as required by the said statutes of the United States and the said regulations of the Secretary of the Treasury as made and provided were kept, showing the identity of the lead on importations throughout the process of manufacture and the exportation thereof. The count further alleges that the true and accurate records so required were not kept, and duties had not been paid on said lead, of which plaintiff was ignorant, and that plaintiff made the payments aforesaid under mistake of fact and relying upon and believing these false representations of the Union Company.

The second and third counts involve payments made to M. Hartley Company and to Hartley & Graham, respectively, as heretofore indicated, through misrepresentations of the Union Company.

Various grounds of demurrer were alleged, which may be summarized thus:

I. Failure to allege a cause of action.

II. Misjoinder of causes of action.

III. Misjoinder of parties defendant.

Upon the argument the plaintiff urged that, as the demurrers were general in form, they presented no question of law, for the reason that the Connecticut Practice Act, in section 608, provides: "All demurrers shall distinctly specify the reasons why the pleading demurred to is insufficient." Defendants then moved for leave to amend the demurrers, and the motions, which are in the discretion of the court, were granted. The amended demurrers attack the sufficiency of the complaint; the demurrer of the Remington Company on the following grounds:

I. Failure to show that plaintiff is a party to the agreements by which the Remington Company assumed the debts of the Union Company and of Marcellus Hartley Dodge and the M. Hartley Company.

II. Failure to show any privity of contract between the Remington Company and plaintiff, and an affirmative showing by the complaint that there was no such privity.

III. Failure to show consideration for any agreement obligating the Remington Company to pay the obligations of the Union Company, Marcellus Hartley Dodge, M. Hartley Company, or Hartley & Graham,

and the actual affirmative showing by the complaint that there was no consideration.

IV. Failure to show how the Remington Company became obligated to pay such obligations, and an affirmative showing by the complaint that no agreement was made between plaintiff and Remington Company whereby the Remington Company undertook to pay plaintiff's claims.

The amended demurrer of the defendant Union Company is on the ground that no cause of action has been alleged, because:

I. The duties and obligations imposed by law on the plaintiff cannot be delegated to this defendant; that plaintiff, and not defendant, is required to identify the imported materials.

Both parties defendant demur on the ground that causes of action have been improperly united and that there is a misjoinder of parties defendant.

The Act of October 1, 1890 (26 Stat. 567), provides as follows:

"Sec. 25. That where imported materials on which duties have been paid, are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties: Provided, that when the articles exported are made in part from domestic materials, the imported materials, or the parts of the articles made from such materials shall so appear in the completed articles that the quantity or measure thereof may be ascertained: And provided further, that the drawback on any article allowed under existing law shall be continued at the rate herein provided. That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall in all cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials used, and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, to the agent of either or to the person to whom such manufacturer, producer, exporter or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe."

[1, 2] Defendants claim that the meaning of the act is that the customs officers shall ascertain the quantity of the imported material. However this may be, if information is furnished to the customs officials by the exporter, which is known by the latter to be false, or which is inaccurate, and the government, in reliance upon the truth of such information, makes payment of "drawback," it would be contrary to good morals to refuse to permit such payment to be recovered from those by whom such information was furnished. It seems obvious to the court that the government must rely upon sworn statements; it can neither detect substitution of similar materials, nor in many cases determine by examination how much of a component ingredient appears in a finished product for export. It does not appear reasonable that either the law or the regulations ever intended to require that a customs official should remain at the factory where imported material is made up into articles for export, so as to have the same under continuous observation, as is suggested by defendants. The complaint alleges that no true records were kept; it also alleges that

the Secretary of the Treasury promulgated regulations requiring the keeping of accurate and true account of all imported material. I think this is a sufficient allegation of failure to comply with the regulations.

[3] The defendant Remington Company argues with great force that there was no privity of contract between plaintiff and the Remington Company when the latter assumed the obligations of the Union Company. The complaint alleges that the Remington Company acquired all the assets of the Union Company when it assumed the obligations of the latter. It seems to the court that, where assets of A. have been taken over by B., a promise by B. to pay A.'s debts should be enforceable in actions at law by A.'s creditors. Whatever conflict of authority there may be, the reasoning in Lawrence v. Fox, 20 N. Y. 268, as explained by Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, and Smyth v. City of New York, 203 N. Y. 106, 96 N. E. 409, is sound and is here adopted. It cannot be said that the United States, if it has a claim against the Union Company was a stranger to a contract by which the Remington Company obligated itself to pay the debts of the Union Company when it took over all the assets of the latter. Indeed, it is fair to assume that the Remington Company actually intended to be responsible for all such debts.

[4] The court does not find that the complaint upon its face shows that the United States is estopped from claiming the relief sought or that it has been guilty of laches.

[5] There was no misjoinder of causes of action, nor of parties defendant. In section 613, Connecticut Practice Book, it is provided that the plaintiff in any civil action may include in his complaint both legal and equitable rights and causes of action, but that—

"Where several causes of action are united in the same complaint they must all be brought to recover, either (1) upon contract, express or implied; * * * (7) upon claims, whether in contract, or tort, or both, arising out of the same transaction or transactions connected with the same subject of action."

Section 150, Rules under Conn. Pr. Book, is as follows:

"Transactions connected with the same subject of action may include any transactions which grow out of the subject-matter in regard to which the controversy has arisen; as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, and also an injury to them by his fault or neglect; the breach of a covenant for quiet enjoyment by the entry of the lessor, and also a trespass to goods, committed in the course of the entry."

Section 618, Conn. Prac. Book, is as follows:

"Any person may be made a defendant who has or claims an interest in the controversy, or any part * * * adverse to the plaintiff, or whom it is necessary, for a complete determination or settlement of any question involved therein, to make a party."

In section 120 of the Rules under said Practice Book, is the following:

"Persons may be joined as defendants against whom the right to relief is alleged to exist in the alternative, although right to relief against one may be inconsistent with the right to relief against the other."

In section 622 of said Practice Book is the following:

"No action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the cause, as it may deem the interests of justice to require."

[6] The defendants have also moved that plaintiff be required to amend the complaint by setting forth various details with respect to the alleged agreements. This information, if necessary, in order to enable the defendants to prepare their defenses, should be obtained by a bill of particulars; the motions to require plaintiff to amend the complaint are denied.

The amended demurrers are overruled.