The UNITED STATES, Appellant,

v.

HERAEUS–AMERSIL, INC., Appellee.

No. 81–19.

United States Court of Customs
and Patent Appeals.

Feb. 18, 1982.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., David M. Cohen, Joseph I. Liebman, Attorney-in-charge, and Saul Davis, New York City, for appellant.

Richard C. King, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

BALDWIN, Judge.

This is an appeal from a decision of the United States Court of International Trade[1] dealing with the question of when increased duties determined on liquidation must be paid to the United States Customs Service. We affirm.

### Background

At issue is the payment of increased duties on six entries of precious metal wire imported by appellee. Appellant contends that the increased duties were due, in accordance with Customs Regulations,[2] upon receipt by appellee of the bills for duty for each entry.[3] When appellee refused to pay, and instead filed a protest of the classification of the merchandise which resulted in the increased duties, the Customs Service invoked 19 CFR 142.13(b) and 142.14 to deny appellee the option of delaying payment of estimated duties due on its future entries.[4] Appellee thereafter brought this action, seeking (1) a declaration that the increased duties were not due until an appeal was filed against a denial of appellee's protest (or until such an appeal was barred by the statute of limitations), and (2) an

---

1. *Heraeus-Amersil, Inc. v. United States*, 1 CIT ———, 515 F.Supp. 770 (1981).

2. 19 CFR 24.3(e) (1981) provides that:

   A bill for duties, taxes, or other charges is due and payable upon receipt thereof by the debtor.

3. 19 U.S.C. § 1505(a) requires deposit of estimated duties (i.e., those duties estimated by the importer at time of entry) before the merchandise is released, subject to certain exceptions like posting of a bond. Consequently, imported items cannot leave the docks until the importer's payment (or some recognized equivalent) is presented. Thus, collection or refund of "increased or additional duties" mentioned in § 1505(b) is unrelated to the monies paid by the importer at entry. Section 1505(a) leaves no doubt as to when *estimated* duties (as op-

posed to increased and additional duties) are "due."

4. 19 CFR 142.13(b) states in relevant part that the "regional commissioner may require that * * * estimated duties * * * be deposited at the time of entry * * * if the importer is substantially or habitually delinquent in the payment of Customs bills." 19 CFR 142.14 provides, *inter alia*, that an importer who is "substantially or habitually delinquent" will be notified "that if payment * * * [is] not made within 10 working days from the date of the notice, he shall be required to file the entry summary document with estimated duties attached, before his merchandise may be released in any Customs region."

injunction against appellant's revocation of appellee's delayed-payment option.

### Decision of the Trial Court

The trial court noted, *inter alia*, that 19 U.S.C. § 1515(a) essentially reenacted Section 515(a) of the Tariff Act of 1930 by granting the Customs Service authority to remit any duties assessed in excess, as well as to refund excess duties collected. Moreover, the trial court cited the legislative history of § 515 as demonstrating Congress' intention that payment not be required "unless and until the protest [of increased duties] was forwarded to the Board of General Appraisers (subsequently the United States Customs Court)." 515 F.Supp. at 774. The trial court therefore concluded, as a matter of law, that increased duties were not due until the filing of a civil action with the Court of International Trade under 28 U.S.C. § 1581(a), or until the expiration of the applicable statute of limitations, if no action were filed. Accordingly, the trial court also held that appellee could not be found "substantially or habitually delinquent" in the payment of the increased duties pursuant to 19 CFR 142.13(b) until the period for filing a civil action had run. 515 F.Supp. at 775.

### OPINION

■■■ Before us, the appellant argues primarily that the trial court's holding ef-

fectively repeals 19 U.S.C. § 1505(b), which appellant contends authorizes the Customs Service to collect any increased duties due upon liquidation. However, the relevant portion of § 1505(b) states only that the "appropriate customs officer shall collect any increased * * * duties due * * * as determined on a liquidation." 19 U.S.C. § 1505(b) (1981). We cannot find in the quoted language a clear indication of when duties "determined" on liquidation are "due," and appellant has cited no statutory provision to the effect that increased duties are "due" when the importer receives the bill for duties, as 19 CFR 24.3(e) now specifies. We therefore reject appellant's contention that the trial court's construction of "remit" in § 1515(a) contravenes any grant of authority to the Customs Service under § 1505(b).

Appellant also asserts that Congress intended to distinguish statutory provisions governing administrative and judicial review of protests from provisions dealing with the collection of increased duties by the Customs Service. However, a review of the development of the present statutory scheme for protesting increased duties indicates that the time when such duties have been due under law has been directly linked to the times for filing and appealing protests.[5] Therefore, we are not persuaded that Congress intended the dichotomy urged by appellant.

---

5. Before passage of the Customs Administrative Act of 1890, no statutory requirement was made for payment of additional or increased duties pending the appeal of a liquidation. *See* Act of March 3, 1857, ch. 98, § 5, 11 Stat. 192 (1857). After 1890, a protest filed with the collector was transmitted for consideration to the Board of General Appraisers only after payment of all duties, with the importer receiving a refund from the Secretary of the Treasury if his protest were ultimately vindicated. Act of June 10, 1890, ch. 407, §§ 14–15, 26 Stat. 131 (1890). *See United States v. Goldenberg*, 168 U.S. 95, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *In re Strauss, Sachs & Co.*, T.D. 18724—G.A. 4037 (1897). *See also International Clearance Co. v. United States*, T.D. 48544 (Cust.Ct.1936). In the Tariff Act of 1922, Congress for the first time empowered the collector to collect increased duties "due" as determined on liquidation; in addition, the collector was to reconsid-

er his assessment of duties when a protest was filed, and could "refund" duties deemed paid in excess. Act of September 21, 1922, ch. 356, Title IV, §§ 504, 514 & 515, 42 Stat. 858 (1922). Thereafter, increased duties were considered "due" by law when a protest was filed, apparently in part because the collector could then make a "refund," if appropriate. *See* H.R. Rep.No. 7, 71st Cong., 1st Sess. 179 (1929). Consequently, when Congress amended the 1922 Act to authorize the collector to "remit or refund" excess duties after a protest was filed, as well as to eliminate payment of duties as a prerequisite to filing a protest, Act of June 17, 1930, ch. 497, Title III, §§ 514–515, 46 Stat. 590 (1930), it was with the express intention that payment of increased duties "not be required unless and until the protest goes to the Board of General Appraisers." H.R.Rep.No. 7, *supra* at 179.

Finally, appellant argues that Congress, having twice reenacted § 1505 and § 1515 without substantive revision since 19 CFR 24.3(e) was promulgated, has thereby effectively sanctioned the Customs Service's requirement that duties be paid on receipt of customs bills. However, the inconsistency between 19 CFR 24.3(e) and the legislative history cited by the trial court and in note 5 above precludes acceptance of appellant's argument.[6]

The judgment of the United States Court of International Trade is *affirmed.*[7]

---

6. We note the apparent confusion in judicial statements, largely dicta, concerning whether increased duties must be paid when a protest is filed, or when denial of a protest is appealed. *Compare V.W. Davis v. United States*, T.D. 49012 (Cust.Ct.1937), *and* cases cited therein, *with Central Commodities Corp. v. United States*, 6 Cust.Ct. 452, 454, C.D. 514 (1941) *and Department of the Army v. United States*, 25 Cust.Ct. 330, 331 (1950). *Compare In re N.C. Trading*, 66 CCPA 11, 23 n.31, C.A.D. 1215, 586 F.2d 221, 232 n.31 (1978) *and Kloris, Ltd. v. United States*, 56 Cust.Ct. 365, 368, C.D. 2660 (1966) *with A.W. Fenton Co. v. United States*, 55 CCPA 54, 59–60 (1968) *and Flagstaff Liquor Co. v. United States*, 73 Cust.Ct. 132, 136–37, C.D. 4563, 388 F.Supp. 554, 559 (1974). Contrary to appellant's contention, we do not find a consistent, established line of judicial holdings on this issue which Congress could have adopted in enacting § 1515.

7. It may be true, as appellant posits, that some importers will routinely file protests against increased duties on the 90th day after liquidation, await a Customs Service decision, and then delay payment for another 180 days, thereby obtaining interest-free use of monies otherwise owed the government. Nevertheless, the policy considerations underlying the need for reform in this context, if reform be required, must be addressed by Congress.