**WASHINGTON INTERNATIONAL INSURANCE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 84–09–01315.

United States Court of International Trade.

Feb. 9, 1989.

Sandler & Travis, Ellen Rubin, Miami, Fla., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Civil Div., U.S. Dept. of Justice, Saul Davis, New York City, for defendant.

## OPINION

RESTANI, Judge:

This case involves a dispute over liquidation of imported footwear from South Korea. At the time of entry the subject goods were given duty-free status. Customs later determined that such status did not apply, and a duty of 37.5% *ad valorem* was assessed. Plaintiff claims that the government failed to properly liquidate the subject goods at the increased duty rate within the one year period required by statute and accordingly, that the goods must be deemed liquidated at the rate at which they were entered, that is, duty-free. *See* 19 U.S.C. § 1504 (1982 & Supp IV 1986). Plaintiff has filed a motion pursuant to Rule 56 of the Rules of this Court seeking summary judgment. Defendant cross-moves for summary judgment based upon a lack of jurisdiction. It also claims that liquidation occurred properly within the one-year period.

The court finds that it lacks jurisdiction as plaintiffs have failed to fulfill the requirements of 19 U.S.C. § 1514(c)(2) (1982), the predicate to jurisdiction under 28 U.S.C. § 1581(a) (1982).[1] The Court therefore grants defendant's motion for summary judgment.

## BACKGROUND

This case involves two consolidated actions. With the exception of one important difference, to be discussed later, the fact pattern of the two actions are essentially identical. Red Line Shoe, Inc. ("Red Line") is the importer of record in both actions. Plaintiff, Washington International Insurance Company, is the surety for Red Line. Red Line imported two shipments of footwear parts and leather shoe uppers into the United States. The first shipment entered the United States on or about May 12,

---

1. In the event that the court is in error and that it possesses jurisdiction, it would nonetheless grant defendant's motion for the reasons discussed herein relating to notice of liquidation.

1982. The second shipment entered on June 9, 1982. The importer entered the shipments under the tariff provisions for leather shoe uppers, item A791.2700, TSUS (1982), and for parts of footwear, item A774.5035, TSUS (1982). Pursuant to the Generalized System of Preferences, both provisions are duty-free items for South Korean merchandise. Due to the fact that the footwear parts and uppers were imported in the same shipment, Customs Service treated them as entireties and classified the merchandise under item 700.57, TSUS (1982). dutiable at 37.5% *ad valorem.* Neither the importer nor plaintiff has disputed this application of the entireties doctrine. Thus, the substance of Customs' decision is not challenged.

On August 20, 1982, Customs liquidated the first entry posting the notice of liquidation under the name "Japan Books & Gifts, Inc." ("Japan Books") rather than under the name "Red Line".[2] Customs liquidated the second entry on October 7, 1983, again using the name Japan Books in its official notice of liquidation. Apparently, Customs posted the notices under the name Japan Books because that name corresponded with the importer identity number supplied to Customs by the importer Red Line. In addition to posting an official notice of liquidation, Customs generated a courtesy notice of liquidation and a bill for increased duties, both of which were sent to Japan Books & Gifts, Inc. *See* Painter Affidavit attached to *Defendant's Response.*[3]

When Red Line did not pay the liquidated duties assessed against it, two separate demands for duties owed were made upon the surety, one for each entry. Plaintiff timely filed its protests to such demands with Customs claiming liquidation at the entered rate by operation of law.[4] Both protests were denied. Whereupon, plaintiff filed suit with this court.

## DISCUSSION

 Defendant argues that Plaintiff did not satisfy the requirements of 19 U.S.C. § 1514(c)(2), the satisfaction of which is a prerequisite to this court's jurisdiction. 19 U.S.C. § 1514(c)(2) states in relevant part:

A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond. *If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in the subsection.* (emphasis added).

Plaintiff does not dispute that it did not file the appropriate certification as required by § 1514(c)(2). Instead plaintiff asserts that it is "ironic" that the government now argues that plaintiff was required to file a certification considering that there is no evidence that the government ever sought payment from the importer of record. The court fails to see the relevancy of this assertion. Section 1514(c)(2) by its terms requires the surety to certify that it is not acting collusively. The provision does not say that it is applicable only in a case where the government has made a demand

2. On March 25, 1983, the bulletin notice was re-posted with the name "Japan Books & Gifts, Inc." stricken in red. On this same notice, Red Line was properly indicated as the importer of record. As the Court noted in a letter to the parties dated September 28, 1987, there would seem to be no problem with the liquidation of this entry. The regulations stipulate that liquidation must occur in one year. Customs corrected the notice of liquidation within the one year period, rendering the liquidation proper under any theory.

3. Considering the apparent closeness of the two companies' business relationship, i.e., the two importers were located at the same address and were close enough so that Red Line had access to Japan Book's identity number, the court views skeptically plaintiffs assertion that the importer of record did not receive notice of liquidation. In any case, initially Customs did what it reasonably could be required to do vis-à-vis an importer providing an improper identity number.

4. The protest to the demand referencing the first entry was filed on January 27, 1983. The protest to the second demand, referencing the second entry, was filed on November 16, 1984.

on the importer.[5] Nor does the legislative history of the provision suggest that this should be the case.[6]

Instead, the legislative history underscores the underlying *quid pro quo* which is the basis for the 1979 amendment. Prior to the 1979 amendment, a surety, like its principal, had only 30 days from the date of decision in which to file protest. In 1979, Congress extended a surety's time for protesting because it found that the surety was oftentimes disadvantaged by Custom's policy of not notifying the surety that liquidation had occurred. The result of this policy was that the surety would often not discover that liquidation had occurred until the 30 day time period had run. To remedy this problem, Congress extended the time period in which a surety could file protest to 90 days. *Peerless Insurance Co. v. United States*, 12 CIT ——, 703 F.Supp. 104, 105 (1988). In return for this benefit, Congress required the surety to file a certification that it was not acting collusively with the principal in order to extend the 30 day time period in which the principal had to protest. One obvious purpose of this provision was to lessen the administrative burden on Customs of having to investigate and determine whether the surety and principal were acting collusively each time

a surety protested beyond the 30 day time period allowed its principal.

Plaintiff has asserted no reason for not complying with the certification requirement. Furthermore, given the ease of filing such a certification, the court is hard-pressed to conceive of what such a reason might be.[7] In addition, the court finds no other equitable reason which would warrant waiver of the certification requirement, assuming *arguendo* that compliance with such requirement was intended to be waivable in certain circumstances.[8] That is, plaintiff's substantive claims do not cry out for court action.

As noted earlier, in regard to the first action, Customs reposted the notice of liquidation with the correct importer name within the one year liquidation period specified by statute. *See* 19 U.S.C. § 1504. Because proper liquidation occurred within the statutorily prescribed time-period, plaintiff would have no cause of action regarding this first entry even if jurisdiction were present. As to the second entry, plaintiff asserts that "the liquidation is illegal, null and void, since the bulletin notice of liquidation shows an incorrect importer of record." Plaintiff's Brief at 4. Plaintiff claims that as to this entry, a deemed liquidation occurred when Customs failed to notify either the importer of record, or the

---

**5.** Plaintiff asserts that there is "no evidence" that the government ever sought payment from Red Line. Yet plaintiff does not dispute that Customs generated two courtesy notices of liquidation and bills which it sent to Red Line's address, albeit addressed to Japan Books. It was not until a demand for payment was made upon plaintiff, and plaintiff had filed the first of its two individual protests, that Customs became aware that it had listed the wrong importer's name on the notice of liquidation for the first entry.

**6.** The legislative history says:

It is also clear under present law that sureties have had difficulty in fulfilling the prerequisites to suit in the Customs Court due to the frequent failures of the sureties to receive notice of the failure of the importer to pay the duties until after the time for filing a protest has expired. Section 1001(b)(3)(E) would remedy this problem by permitting a surety to file a protest in its own name and by extending the time within which it may file a protest *so long as it certifies that it is not filing the*

*protest simply because the importer allowed his time to file a protest to expire without filing a protest.* (emphasis added).
S.Rep. No. 249, 96th Cong., 1st Sess. 254, *reprinted in* 1979 U.S.Code Cong. & Admin. News 381, 640.

**7.** Plaintiff claims the certification was not necessary here because the importer is not locatable. Thus, it argues collusion was an impossibility. The statute does not exempt a party from certifying non-collusion in such circumstances and no sufficient reason for finding such a Congressional intent has been offered. This court finds no *per se* rule allowing omission of certification in such circumstances.

**8.** Additionally, both parties have made what the court considers overly broad, if not frivolous, arguments about the meaning of the words "a protest by a surety which has an unsatisfied legal claim" as set forth in 19 U.S.C. § 1514(c)(2). In view of the court's other reasons for its decision, the court will not address such arguments.

surety, within the one year liquidation period, that liquidation had occurred.

■ In response to this argument, defendant claims that liquidation and notification are two separate events and that, consequently, an improper notification does not nullify or void an appropriate liquidation. Defendant argues that the term "liquidation" applies only to the "final administrative determination of duties due" not to the notification procedure. *See* Defendant's Brief at 4. Following this rationale, defendant asserts that because it properly calculated the amount of duties owed on the entry at the time it posted the original notice, the liquidation was proper and completed within the prescribed one year period. The government is of the view that a defective, or improper notification bears no relation to the liquidation itself.

Contrary to defendant's position, the court finds that notice is a necessary component of liquidation. 19 C.F.R. § 159.9(c) provides:

> The bulletin notice of liquidation shall be dated with the date it is posted or lodged in the customhouse for the information of importers. The entries for which the bulletin notice of liquidation has been prepared shall be stamped "Liquidated," with the date of liquidation, which shall be the same as the date of the bulletin notice of liquidation. This stamping shall be deemed the legal evidence of liquidation.

Thus, Customs itself, at the time it enacted this provision, envisioned that notice would be an integral part of the liquidation procedure. Section 159.9(c) clearly specifies that it is the act of giving notice which gives legal stature to the event of liquidation. Without a public declaration, the liquidation has no legal effect. There is no such thing as a secret liquidation.[9]

■ In the present case, however, it appears that the notification of liquidation with regard to plaintiff's second entry of goods was sufficient to give the liquidation legal effect. Although Customs posted the notice of liquidation using an incorrect importer's name, the mistake in this case was originally caused by Red Line when it incorrectly listed the importer identification number of Japan Books. Plaintiff does not dispute this fact, but instead simply asserts that the notice was inadequate because Customs had an affirmative duty to discover that the name listed on the entry bond did not match the entry number which was listed on the same bond.

Customs has filed an affidavit, the essential facts of which are not disputed, asserting that its operations as they relate to liquidation are computerized. *See* Painter Affidavit. According to Customs, its computer program is such that Customs notifies the operator that an error has occurred only when the number inserted is wrong, in the sense that the number inserted does not match up with the number of any importer of record on the Customs list. In this case, the importer provided a working number to Customs. The number provided was that of another importer whose offices were located at the same address as the actual importer involved in the relevant entry. Thus, the court finds that even though the second entry was not re-posted with the correct name within the one year period, there is no reason in this case to disapprove totally the notification proce-

---

9. This is not the same as saying that such a liquidation may be "void," but, nonetheless, is protestable, as defendant would argue. A liquidation without notice is simply not a liquidation. No one could possibly be held to protest an event which could not be known, even upon reasonable inquiry. Furthermore, the purpose of 19 U.S.C. § 1504 and its one year liquidation requirement is to limit the period in which changes in the liability of importers are allowed. Prior to enactment of section 1504, an importer may not have learned until years after its goods had been imported and sold that additional duties were due, or conversely may have deposited more money for estimated duties than were actually due, but could not recover the excess until years later when liquidation occurred. Section 1504 was enacted to remedy the uncertainty of the liquidation process, thereby enabling the parties to better control their liabilities. *See* S.Rep. No. 778, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2211, 2243. The government's interpretation of "liquidation" completely vitiates the purpose of section 1504; for without notice, the importer/surety has no better knowledge of its potential liabilities than it had prior to the enactment of § 1504.

dures which Customs did employ.[10] Thus, viewing this case as a whole, and assuming *arguendo* that Congress intended that some of the technical requirements of section 1514(c)(2) could be waived in appropriate cases, the court finds no reason to relieve plaintiff of any of the technical burdens of the protest procedure in this case. The liquidation is not claimed to be substantively at an improper rate, the notice of liquidation was adequate given the circumstances, and plaintiff has offered no reason why it could not provide the simple certification required at the time of protest.

Accordingly, defendant's motion for summary judgment is granted and the action is dismissed.

10. This is not a case in which renoticing of the liquidation at this point would assist anyone. Plaintiff seeks a complete nullification of the liquidation, not an opportunity to argue the substance of the classification. The court does not decide in what circumstances renoticing would be appropriate.