The **UNITED STATES**, Plaintiff,

v.

**ATAKA AMERICA, INC.,
et al., Defendants.**

**Court No. 92–10–00710.**

United States Court of International Trade.

June 21, 1993.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Bruce N. Stratvert, Ted Kundrat, Office of Asst. Chief Counsel, U.S. Customs Service, of counsel, for plaintiff.

Sharretts, Paley, Carter & Blauvelt, P.C., Allan H. Kamnitz, for defendant Itochu Intern. Inc.

Sandler, Travis & Rosenberg, P.A., Ronald W. Gerdes, Edward M. Joffe, Arthur K. Purcell and Beth C. Ring, for defendant St. Paul Fire & Marine Insurance Company.

## OPINION

RESTANI, Judge:

This case comes before the court on three motions: (1) the motion of defendant Itochu International Inc. ("Itochu") for judgment on the pleadings against the United States, (2) the motion of defendant St. Paul Fire & Marine Insurance Co. ("St. Paul") for summary judgment against the United States, and (3) the United States' cross-motion for summary judgment against St. Paul. The United States commenced this suit to demand payment of anti-dumping duties, and therefore this court has jurisdiction under 28 U.S.C. § 1582(2) and (3) (1988).[1]

### Background

Between January 1976 and March 1977, Ataka America, Inc. ("Ataka America") made 42 entries of steel wire rope from Japan. Ataka America, with defendant St. Paul as surety, posted bonds to cover the cost of any duties assessed. The bonds state,

> Ataka America, Inc. ... as principal, and St. Paul Fire & Marine Insurance Company ... as surety, are held and firmly bound unto the UNITED STATES OF AMERICA in the sum of Twelve Hundred Eleven & no/100 dollars ($1211.–), for the payment of which we bind ourselves, our heirs, executors, administrators, successors, and assigns.

1. The statute grants exclusive jurisdiction to this court in cases "commenced by the United States— ... (2) to recover upon a bond relating to the importation of merchandise ...; or (3) to recover customs duties." 28 U.S.C. § 1582(2), (3).

*See, e.g.,* Plaintiff's Exhibit A–1. The United States Customs Service ("Customs") liquidated the entries of wire rope in the period between September 1979 and June 1980, assessing a total of $189,588.62 in anti-dumping duties against Ataka America. Customs sent a bill to Ataka America on the day of liquidation. The formal demand on St. Paul as surety was made on March 17, 1981.[2] Ataka America filed timely protests, which Customs finally denied approximately eleven years later on October 25, 1991.

During the eleven-year hiatus, Ataka America and its related companies underwent several changes. At the time of importation, Ataka America was doing business in Illinois. Ataka America sold the imported goods to its subsidiary, Alps Wire Rope ("Alps"). The stock of Alps was subsequently transferred to Ataka USA, Inc. ("Ataka USA"). Ataka America retained certain other assets. On October 4, 1977, Ataka USA merged into C. Itoh & Co. (America), Inc. ("Itoh"), which now has offices in New York. Itoh was later renamed Itochu International Inc., the name under which it appears as a defendant in this action. The pleadings do not indicate when, if ever, Ataka America ceased doing business.

Itochu admits that it is liable for all debts of Ataka USA. For the purpose of this motion, Itochu must also admit, as alleged in the complaint, that Ataka USA at some time in the past used Ataka America's import identification number plus a suffix. Itochu denies, however, that liability for Ataka America's debts falls on its shoulders. Itochu therefore moves for judgment on the pleadings. St. Paul, the surety on Ataka

America's customs entry bonds, opposes Itochu's motion. It interposes its own motion for summary judgment on the ground that the statute of limitations has run, or, alternatively, that Customs' over ten-year delay in deciding Ataka America's protests unreasonably postponed the running of the statute of limitations.

### Discussion

### I.  Statute of Limitations vis-à-vis Itochu

■ Although it did not raise the issue in its motion for judgment on the pleadings, Itochu alleged in its answer that the action against it was untimely.[3] The court at oral argument asked specifically whether a statute of limitations is applicable to the claim of the United States to recover customs duties from an importer such as Ataka America and its alleged successors. The parties provided their comments on this issue by letter briefs of May 13 and 17, 1993.

■ As neither title 19 nor title 28 of the United States Code provides a specific statute of limitations for such claims, the issue is whether 28 U.S.C. § 2415(a) (1988) (six-year contract statute of limitations) should be read to bar suit by the United States.[4] The general rule is that the United States is exempt from statutes of limitations unless Congress has expressly provided otherwise. *United States v. City of Palm Beach Gardens,* 635 F.2d 337, 339 (5th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981) (citing *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938)). Congress did not expressly limit the sovereign's right to sue in

---

2.  On September 24, 1982, Customs reissued the bills because the initial ones had been improperly canceled. Customs again reissued the bills on January 1, 1988, noting that the protests were still pending.

3.  Its defense appears to be laches rather than the statute of limitations. Laches may involve factual issues while a statute of limitations defense ordinarily would not and should not have been raised in both the answer and motion for judgment on the pleadings to avoid arguments of waiver. As an affirmative defense based on untimeliness was raised, however, the court deems it in the interest of judicial economy to explore the statute of limitations issue at the outset. The

court does not address whether the laches defense remains viable either substantively or procedurally. *See* USCIT Rule 12(g).

4.  Section 2415(a) states:

> every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.

28 U.S.C. § 2415(a).

this area to its contractual rights. *See* 28 U.S.C. § 1582(2), (3) (distinguishing between suit to recover on a bond from suit to collect customs duties); 19 U.S.C. § 1505(b) (1988) (providing for collection of customs duties from importer without specifying a time limit).

Courts have refused to apply the contract statute of limitations to the government where the obligation, although expressed in a contract, is essentially statutory. *Palm Beach Gardens*, 635 F.2d at 340; *see also United States v. St. John's Gen. Hosp.*, 875 F.2d 1064, 1068 (3d Cir.1989). It is a long-standing principle that customs duties are a personal debt upon the importer that derives from a statutory rather than a contractual obligation. *United States v. Cobb*, 11 F. 76, 79 (C.C.D.Mass.1882). Thus, suit by the United States against Itochu for recovery of duties is not barred by the contractual statute of limitations found in 28 U.S.C. § 2415(a).

## II. Itochu's Motion for Judgment on the Pleadings

A party who moves for judgment on the pleadings is deemed to admit all of the facts of the adversary's pleadings while denying their sufficiency as a matter of law. *Superscope, Inc. v. United States*, 12 CIT 283, 285, 1988 WL 30645 (1988). Any factual inferences must be drawn in favor of the non-moving party. *C.J. Tower & Sons, Inc. v. United States*, 68 Cust.Ct. 377, 383, 343 F.Supp. 1387, 1393 (1972). A motion for judgment on the pleadings will not be granted unless there is no issue of material fact and the movant is clearly entitled to judgment as a matter of law. *Superscope*, 12 CIT at 285.

In its motion, Itochu argues that as a corporate successor to the subsidiary of the importer of record, it has no liability for the original importer's debts. The majority rule on successor liability is clear—a corporate successor is responsible for its predecessor's debts only if (1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a *de facto* merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent to defraud creditors. *See, e.g., Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir.1985) (citing the law of several federal district and circuit courts).[5] The occurrence of a *de facto* merger or a mere continuation of a corporate entity are the only two exceptions directly implicated in this case.[6] *United States v. Union Metallic Cartridge Co.*, 265 F. 349 (D.Conn.1920), does not contradict the well-established rules of corporate law on *de facto* merger and continuation. In *Union Metallic*, the district court considered a complaint alleging that a corporation had assumed the obligation to pay customs duties owed by another corporation whose assets it had previously acquired. *Id.* at 350. The court reasoned, "where assets of A. have been taken over by B., a promise by B. to pay A.'s debts should be enforceable in actions at law by A.'s creditors." *Id.* at 353. In applying that rule of law, the court declared,

> [i]t cannot be said that the United States ... was a stranger to a contract by which [B. Company] obligated itself to pay the debts of [A. Company] when it took over all the assets of the latter. Indeed, it is fair to assume that [B. Company] actually intended to be responsible for all such debts.

*Id.* *Union Metallic* stands merely for the unsurprising proposition that an acquiring corporation's promise to pay an acquired cor-

---

**5.** A federal court sitting in New York will follow the majority rule. *See Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 838 & n. 3 (S.D.N.Y.1977). Choice of law does not appear to be a point of dispute.

**6.** The government invokes the first exception by arguing that Ataka USA's use of Ataka America's importer identification number indicates "an implied assumption of liability for the duties in issue." Plaintiff's Memorandum in Opposition to Defendant Itochu International Inc.'s Motion for Judgment on the Pleadings, at 5. The government cites to no case that bolsters this assertion, however. In addition, the government makes no factual allegations to support a claim that the restructuring of Ataka America and Ataka USA was motivated by fraudulent purposes. *Id.*

poration's debts encompasses debts to Customs as well.

Plaintiff's emphasis on Ataka USA's use of Ataka America's import identification number appears misplaced. Customs is indeed entitled to rely on what an importer asserts to be its identification number in notifying that importer of the liquidation of its goods, for example. *Washington Int'l Ins. Co. v. United States*, 13 CIT 112, 116–17, 707 F.Supp. 561, 565–66 (1989). In contrast, Customs could not have relied on Ataka USA's subsequent and unrelated use of Ataka America's import identification number at the time Customs accepted Ataka America's entry bonds.

■ A further flaw in plaintiff's argument is the premise that Ataka America, by transferring its subsidiary, Alps, conferred on Ataka USA an obligation to pay Ataka America's customs duties. One cannot assume that a subsidiary is liable for the debts of its parent corporation. *See FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 422–23 (5th Cir. 1980) (applying Illinois law). In the context of parent-subsidiary relationships, a court will "pierce the corporate veil" and find the parent liable for its subsidiary's debts if two circumstances are present. First, the subsidiary must be a mere instrumentality, under the complete domination of its parent. Second, the parent must manipulate the subsidiary in such a way as to cause an unjust loss to the plaintiff. *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.) (applying New York law), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988).

In a reversal of the typical situation, the plaintiff in this case is essentially attempting to recover the parent's debt from the successor of the subsidiary. Considering similar unusual circumstances, the Fifth Circuit declared, "[a]bandonment of the total domination or 'instrumentality' factor is clearly required in cases seeking to hold the subsidiary liable for the acts of the parent." *Murphree*, 632 F.2d at 422. That court determined that

an element in the test for recovery from a subsidiary is "implied misrepresentation in the extension of credit." *Id.* at 423.[7] As Itochu states, "[t]he mere fact that subsequent to importation, this merchandise was sold to Alps, based upon a pre-existing agreement to purchase the wire rope in this country," does not amount to a representation that Alps would be liable for Customs duties on the merchandise. Defendant Itochu's Memorandum in Support of its Motion for Judgment on the Pleadings, at 6. Liability of Itochu for Ataka America's customs duties can thus result only from a recognized doctrine of corporate law, such as a *de facto* merger or a continuation.

■ The occurrence of a *de facto* merger depends on the presence of four factors: continuity of management, continuity of shareholders, the immediate dissolution of the seller corporation, and the buying corporation's assumption of those liabilities ordinarily necessary for the continuance of business operations. *Bud Antle*, 758 F.2d at 1457–58. Continuity of shareholders derives from the sale of the assets of a corporation in exchange for stock in the acquiring corporation. *Id.* at 1458.

■ Whereas a merger involves the combination of two entities, a continuation entails the transformation of only one. In a continuation, a new corporation, which purchases all the assets of the old, proceeds exactly as if it were the old corporation. *Knapp v. North Am. Rockwell Corp.*, 506 F.2d 361, 365 (3d Cir.1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). A key element of a continuation is also characteristic of a *de facto* merger—the continuity of officers, directors, and stockholders. *Bud Antle*, 758 F.2d at 1458–59.

The complaint filed in this case contained no allegations as to common management and ownership, or the immediate dissolution of Ataka America.[8] It stated only, "in or

---

7. The sophistication of the creditor was an important component of the court's analysis. *Murphree*, 632 F.2d at 424. In *Murphree*, the creditor was an individual, *see id.*, whereas in this case the creditor is the government, a highly sophisticated repeat player.

8. Although Itochu's co-defendant, St. Paul, alleges that the same person acted as secretary-treasurer of Ataka America and of Ataka USA, that information cannot be considered in the context of a motion for judgment on the pleadings.

about 1977, defendant Ataka America transferred certain of its business operations, including the stock of Alps Wire Rope Corp., to Ataka USA." Complaint, at 2. Thus, the only possibility for recovery from Itochu would be based on facts, not yet developed, which would show that, despite corporate form, Ataka USA was a mere continuation of Ataka America or that there was a *de facto* merger of the two entities.

■ Although plaintiff has not alleged detailed facts which would support these theories of liability, the court has determined that in a notice pleading system judgment for Itochu would be premature. *See generally* Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* § 3.1, at 128–29 (3d ed. 1985). There is enough similarity in business activities and uncertainty surrounding the change in corporate form to permit discovery of Ataka USA and Ataka America relationship and the circumstances and effects of Ataka America's transfer of Alps to Ataka USA. Discovery should concentrate on the status of Ataka America immediately following transfer of the Alps stock, and the identity of management and officers and shareholders between Ataka USA and Ataka America. To prevent a major fishing expedition and burden on Itochu, the United States is permitted ninety days from the date of this order to complete discovery on these points. Within thirty days of the completion of such discovery, the parties may file dispositive motions.

## III. The Cross–Motions of St. Paul and the United States for Summary Judgment

■ In its motion for summary judgment, St. Paul argues that plaintiff has failed to file suit within the six-year statute of limitations, that the administrative proceedings initiated by Ataka America's protest did not toll the statute, and that Customs' eleven-year delay in resolving Ataka America's protest was unreasonable. The government contends that the statute of limitations did not begin to run until the protest was resolved, or alternatively that the administrative proceedings were mandatory and thus tolled the statute.

## A. Accrual of the Right of Action

■ The parties agree that in actions brought by the United States to collect customs duties from a surety, the complaint must be filed "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." 28 U.S.C. § 2415(a). It is well settled that the right to claim payment under a bond accrues at the time of breach. *United States v. Cocoa Berkau, Inc.,* 990 F.2d 610, 613 (Fed. Cir.1993). The surety's obligation arises at the time of the principal's breach, unless the parties agree otherwise. *Id.* at 613. In this case, the breach occurred when the defendants failed to fulfill the promise contained in the bonds to "pay any and all such duties and taxes found to be due on the shipment." *See, e.g.,* Plaintiff's Exhibit A–1. The court's task is thus to determine the time the customs duties became due.

The government relies primarily on *United States v. Heraeus–Amersil, Inc.,* 69 CCPA 86, 671 F.2d 1356 (1982). In *Heraeus–Amersil,* the Court of Customs and Patent Appeals affirmed the trial court's holding that payment of customs duties did not become due until after any protests were denied and either the importer filed suit in the Court of International Trade or the time to file suit had expired. *Id.* at 87–88, 671 F.2d at 1358. The statute in force at the time of that decision stated only that the "appropriate customs officer shall collect any increased ... duties due ... as determined on a liquidation." *Id.* at 88, 671 F.2d at 1358 (quoting 19 U.S.C. § 1505(b) (1981)).

Two years later, Congress enacted legislation specifically to counteract the effect of *Heraeus–Amersil.* H.R.Rep. No. 1015, 98th Cong., 2d Sess. 68 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4960, 5027. The purpose of the new legislation was "to allow Customs to take immediate steps to collect monies determined to be due and payable to the United States." *Id.* The new statute provides, "[d]uties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation." 19 U.S.C. § 1505(c) (1988).

The government argues that *Heraeus–Amersil,* rather than § 1505(c), governs this case because the entries at issue occurred in 1976 and 1977, and were liquidated well before the new statute was enacted. Plaintiff cites two general principles of statutory interpretation: (1) the statutory language controls "[a]bsent a clearly expressed legislative intention to the contrary," *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); and (2) a statute applies only prospectively unless retroactive application is "required by explicit language or by necessary implication." *Bruner v. United States,* 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952). An extended discussion of the appropriateness of retroactive application of the law is unnecessary.[9] Although the statute does not expressly cover the issue of outstanding duties, the legislative history clearly states that "any pending duties would be due thirty days following enactment." H.R.Rep. No. 1015, at 67, *reprinted in* 1984 U.S.C.C.A.N. at 5026. This expression of legislative intent is controlling. *See Bennett v. New Jersey,* 470 U.S. 632, 641, 105 S.Ct. 1555, 1561, 84 L.Ed.2d 572 (1985) (applying amendments to substantive law prospectively "absent a clear indication to the contrary in the relevant statutes or legislative history").

Furthermore, the court has already ruled that § 1505(c) is applicable to entries made prior to the effective date of the act and that pending duties include those which were already assessed at the time of the statute's effective date. *Syva Co. v. United States,* 12 CIT 199, 204, 681 F.Supp. 885, 890 (1988) (holding that goods entered before statute's enactment and liquidated afterward are governed by statute). Enactment occurred on October 30, 1984 and the statute became effective thirty days later. *Id.* (citing Pub.L. 98–573, Title II, § 214(c)(5)(A), 98 Stat. 2948, 2989 (1984)). The government admits that the entries were liquidated and the duties on

Ataka America were assessed on September 21, 1979, May 2, 1980, and June 20, 1980. It also admits that formal demand for payment of these duties was sent to Ataka America on the dates of liquidation. Therefore, the duties were pending at the time § 1505(c) was enacted. Because the legislative history provides that pending duties become due thirty days after enactment and that history is compatible with the language of the act, Ataka America was in breach of its bond commitment as of November 29, 1984.

For purposes of determining St. Paul's liability as a surety, the court must look to the date of the principal's breach.[10] *See Cocoa Berkau,* 990 F.2d at 613. The operative date is thus November 29, 1984. The government commenced the present action on October 26, 1992, more than six years after the operative date. Consequently, its suit against St. Paul is time-barred unless the statute of limitations was tolled.

## B. Tolling of the Statute by Administrative Proceedings

### 1. *The Statutory Scheme*

As previously indicated, the statute of limitations provides that suit by the government on a contract or bond must be brought within six years after the right of action accrues or one year after a final decision in administrative proceedings required by contract or by law. 28 U.S.C. § 2415(a). The legislative history explains that Congress intended the statute to be tolled during mandatory administrative proceedings, such as those under the disputes clause of government contracts. S.Rep. No. 1328, 89th Cong., 2d Sess. 3 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2504.

Generally, mandatory proceedings are those which must be completed before rights to file court action accrue. In certain circumstances, completion of administrative proceedings is not necessary to assert a

---

**9.** One might call this legislation remedial as opposed to substantive, thereby eliminating any retroactivity problem. *See Swayne & Hoyt, Ltd. v. United States,* 300 U.S. 297, 302, 57 S.Ct. 478, 480, 81 L.Ed. 659 (1937) (no unfair retroactivity where statute affects remedies rather than substantive rights). One might also state that making the legislation effective as to outstanding

duties on the thirtieth day *after* enactment gives the statute prospective rather than retroactive effect.

**10.** The bond terms do not provide different triggering mechanisms.

claim under the customs laws. A surety's mitigation proceeding for liquidated damages under 19 U.S.C. § 1623(c) (1988), for example, is voluntary and thus does not toll the statute. *Cocoa Berkau,* 990 F.2d at 616. Section 1623(c) gives the Secretary of the Treasury the discretion to cancel a bond if the person obligated under the bond agrees to pay a lesser amount. 19 U.S.C. § 1623(c). Administrative reviews of such claims are based entirely on written submissions with no provisions for a hearing. *Cocoa Berkau,* 990 F.2d at 616. These discretionary and informal proceedings need not be resolved in order for the government to recover liquidated damages under a bond through court action. *See id.* at 615; *cf. Pope Prods. v. United States,* Slip Op. 91–86, at 8, 1991 WL 191223 (Sept. 18, 1991) (pendency of second supplementary petition for mitigation does not toll statute of limitations found in 28 U.S.C. § 2636(h)).

Section 1505(c), Title 19, United States Code gives the United States the right to sue to collect liquidated duties whether a protest proceeding is pending or not. While this appeared to the court in *Heraeus–Amersil* to be a waste of administrative and judicial time, as well as basically unfair, Congress did not agree. It made the right to sue immediate. The right to sue is not delayed by administrative protests. Thus, proceedings to resolve protests are not mandatory for the purpose of government action under 28 U.S.C. § 1582.

Plaintiff confuses the surety's ability to challenge protestable decisions with its own rights to sue. The courts have also been responsible for some confusion. The statutory scheme, however, is clear, although it is intricate and requires some explanation in order to understand the effect of a protest on the surety's immediate obligation to pay and

on the government's obligation to sue within the statutory time limits.

Both the surety and the importer (or certain of its agents) may protest decisions listed in 19 U.S.C. § 1514(a) (1988) (including valuation, classification, "all charges or exactions," exclusion, liquidation ...). Failure to protest such decisions results in the finality of the decision. *Id.* The surety has ninety days from the date of demand on it to file a protest of the § 1514(a) decision that underlies the demand. 19 U.S.C. § 1514(c) (1988).

Where an action by Customs, like the imposition of anti-dumping duties, merges into liquidation, the action must be protested to avoid finality. *Pope Prods. v. United States,* Slip Op. 91–50, at 10, 1991 WL 117814 (June 18, 1991). Where the action does not merge, as in the case of a post-liquidation demand for liquidated damages, it need not be protested but may be raised otherwise as a claim or a legal defense. *See United States v. Toshoku America, Inc.,* 879 F.2d 815, 818 (Fed.Cir.1989) (not requiring protest to defend against claim for liquidated damages because such damages are not protestable charges or exactions under 19 U.S.C. § 1514 (1982)); *United States v. Utex Int'l, Inc.,* 857 F.2d 1408, 1413–14 (Fed.Cir.1988) (not requiring surety to protest in order to preserve its right to defend against government's claim for liquidated damages); *cf. St. Paul Fire & Marine Ins. Co. v. United States,* 959 F.2d 960 (Fed.Cir.1992).

Although a § 1514(a) decision is protestable, a demand against a surety is not in itself such a decision.[11] *See Pope Prods.,* Slip Op. 91–50, at 10. The substantive result is the same, however. The time limits of § 1514(c) require a surety to protest, within 90 days of a demand, any protestable decision on which the demand is based or suffer the effects of

---

**11.** Language in *St. Paul* to the effect that the demand on the surety may be a "charge" subject to protest under § 1514(a) was not necessary to the decision therein and is imprecise. *See St. Paul,* 959 F.2d at 964. In *St. Paul,* the surety's original complaint challenged the classification of the imported goods under the applicable tariff schedules. After investigation, the surety moved to amend its complaint, alleging that the government knew that the importer intended to default on the bond and yet failed to require full deposits

before entering the merchandise. *Id.* at 961. The government argued that the surety's amended complaint was barred because the issue was not raised in a previous administrative protest. *Id.* at 964. The Federal Circuit held that because the surety discovered the government's knowledge of the principal's fraudulent actions after the protest period had expired, failure to file an administrative protest would not bar the surety from suing the government in the Court of International Trade. *Id.*

finality of the protestable decision. 19 U.S.C. § 1514(a), (c).

In this case, the protestable decision occurred when anti-dumping duties were imposed on Ataka America during the period between September 1979 and June 1980, through the liquidation of the entries. The formal demand on St. Paul as surety was not sent until March 17, 1981. Section 1514(c) would have allowed St. Paul 90 days from the date of the demand to protest the original assessment of anti-dumping duties, as part of the liquidation decision. 19 U.S.C. § 1514(a), (c). St. Paul filed no protest. Instead, before the protest period began to run against St. Paul, Ataka America filed timely protests during the period of December 19, 1979 through July 29, 1980. Because of Ataka America's protests, the assessment of anti-dumping duties did not become a final decision as to St. Paul. *See* 19 U.S.C. § 1514(a) (providing for finality "upon all persons ... unless a protest is filed"). The protests could not have been judicially challenged until they were formally denied on October 25, 1991. *See* 28 U.S.C. § 1581(a) (1988).

Following the denial of a protest, suit may be filed challenging the protest denial in the Court of International Trade. *Id.*[12] A prerequisite to such suit is the payment of any "duties, charges, or exactions" outstanding. 28 U.S.C. § 2637(a) (1988). Thus, if the government expects to be sued it may sit back and rely on § 2637(a) to achieve payment. Not every protest denial will result in suit, however, and not every imposition of duties will result in a protest.

If the importer chooses not to protest or not to challenge a protest denial, the government may institute a collection action against the importer at any time because no statutory time bar exists. As to the surety, the government must sue within six years (following the fifteenth day after liquidation) regardless of whether an importer's or surety's protest deprives the assessment of duties of its final effect. *See* 19 U.S.C. § 1514(a). This is the effect of § 1505(c) and Congress'

rejection of the approach taken in *Heraeus–Amersil.*

Thus, the right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety. Accordingly, since the effective date of 19 U.S.C. § 1505(c), completion of protest proceedings has not been a requirement for suit to collect. *Cf. United States v. Bavarian Motors, Inc.,* 4 CIT 83, 86 (1982) (requiring exhaustion of administrative remedies as precondition for suit by government in case before effective date of 19 U.S.C. § 1505(c)). For this purpose the proceedings are not mandatory and no tolling, vis-à-vis the surety's obligation, occurs. Consequently, the payment obligation runs independently of the protest proceedings. While a surety may assert claims as the importer might in an administrative protest, it owes the duties and in the absence of other defenses, breaches its bond if it does not pay in accordance with its obligation, whether or not protest proceedings are pending.

### 2. *Effect of Customs' Delay in Deciding the Protest*

Section 1515(a), Title 19, United States Code provides that Customs shall review a protest and either allow or deny it within a period of two years. 19 U.S.C. § 1515(a) (1988). A private party has 180 days from the mailing of the notice of denial to challenge Customs' decision. *Knickerbocker Liquors Corp. v. United States,* 78 Cust.Ct. 192, 194, 432 F.Supp. 1347, 1349 (1977). Section 1515(a) was enacted primarily to benefit private parties by requiring that Customs notify them of a decision within two years. *See id.* at 195–96, 432 F.Supp. at 1350. In *Knickerbocker Liquors,* the court characterized the provision as "regulatory" and declined to treat it as providing a constructive denial of the protest. *Id.* at 194–95, 432 F.Supp. at 1349–50. Accordingly, the 180–day protest period was calculated according to the date Customs mailed the notice and not the much earlier date of denial of the protest. *See id.* at 197, 432 F.Supp. at 1351.

---

12. The surety may file suit based on its own protest or the protest filed by its principal. 28

U.S.C. § 2631(a) (1988).

*Knickerbocker Liquors* does not address the problem of a decision, rather than notice of a decision, which is delayed longer than two years from the date of filing. In any case, whether Customs resolves a protest proceeding within the two-year time limit or not, the proceeding itself is still non-mandatory for § 1582 purposes and therefore does not toll the statute. Furthermore, the Federal Circuit recently expressed its belief that unilateral acts by Customs do not postpone the running of the statute of limitations. *See Cocoa Berkau,* 990 F.2d at 614. In an earlier case, that court said, "[w]hile Customs' self-imposed internal procedures may constrain its right to sue . . ., they cannot change the defendants' right to repose after the statutory six-year period." *United States v. Commodities Export Co.,* 972 F.2d 1266, 1271 (Fed.Cir.1992) (contrasting Customs' self-imposed notice and demand obligation with contractual obligation or statutory requirement), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993). The rationale for this decision was stated as equalizing the control that the government and private litigants have over a suit. Because a private litigant has no power to toll the statute of limitations indefinitely, neither should the government. *Id.* at —— n. 3, 113 S.Ct. at 1271 n. 3. Nothing in *Knickerbocker Liquors* contradicts this. In sum, the applicable statute of limitations is the six-year statute, which is not tolled in this instance. In waiting almost eleven years to bring suit against the surety, the government has exceeded the limit.

### CONCLUSION

Itochu's motion for judgment on the pleadings is denied. St. Paul's motion for summary judgment is granted on the ground that the statute of limitations has expired. The United States' cross-motion for summary judgment against St. Paul is denied. Discovery as to plaintiff's claim against Itochu is to take place as ordered by the court.