**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–04–00628.**

United States Court of International Trade.

Jan. 29, 1990.

Sandler, Travis & Rosenberg, Edward M. Joffe, Joanne Sargent, Gilbert Lee Sandler, Miami, Fla., and Beth C. Ring, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, U.S. Dept. of Justice, Commercial Litigation Branch, Civil Div., and Kenneth N. Wolf, New York City, for defendant.

## MEMORANDUM OPINION

TSOUCALAS, Judge:

This action is presently before the court on plaintiff's motion, pursuant to Rule 15(a) of the Rules of this Court, to amend its original complaint to include additional claims. Defendant opposes the motion and maintains the court lacks jurisdiction over the subject matter of the additional claims.

## FACTS

Plaintiff St. Paul Fire and Marine Insurance Company acted as corporate surety for Opera Garment Inc. (Opera), the importer of record, under two term bonds covering the entries involved in this action, to wit: leather, fur and fabric coats.

The garments were imported at full net invoiced value and then exported to Opera's plant in Montreal, Canada, for alleged repair or alteration. Opera re-entered the merchandise for sale in the United States seeking treatment under item 806.20,[1] Tariff Schedules of the United States (TSUS),

---

1. TSUS (1986), Schedule 8, Part 1, provides the following:

Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:

| 806.20 | Articles exported for repairs or alterations | [shall be subject to] [a] duty upon the value of the repairs or alterations...... |

which would require the importer to pay a duty only on the value of the repairs or alterations upon re-entry of the merchandise. The United States Customs Service (Customs) denied the importer's application and liquidated the merchandise at full net invoiced value in accordance with Schedule 3 of the TSUS. Opera failed to pay the liquidated duties and plaintiff, as surety, tendered the amount due to Customs. Plaintiff then commenced this action challenging the denial of Opera's protest[2] of Customs' decision to disallow item 806.20, TSUS, treatment for the subject merchandise, and the resulting classification at full Schedule 3 rates.

Plaintiff now claims that certain information received from Customs through discovery revealed that Opera was under investigation by the Customs Service for fraudulent or criminal conduct before and during the time of the subject entries. Plaintiff contends that Customs' failure to disclose this information caused plaintiff both to insure a risk it would not have otherwise insured and to pay monies required under the surety bond. Consequently, nearly thirteen months after receiving the defendant's discovery responses, plaintiff moves to amend its original complaint to include claims against the government for breach of obligations under the surety bond contract and to estop the government from retaining all monies paid.

In opposition to plaintiff's motion to amend the complaint, defendant maintains that this Court lacks jurisdiction over the subject matter of the proposed amended complaint.

Thus, to determine whether the court should grant plaintiff leave to amend its complaint to include the new causes of action, the court must examine the jurisdictional propriety of those claims.

## DISCUSSION

### All Writs Act

Plaintiff contends that the court has jurisdiction over the subject matter of the amended complaint by virtue of the All Writs Act (Act), 28 U.S.C. § 1651(a) (1982).[3] The Act is applicable, plaintiff argues, because there is no jurisdictional statute in this Court which specifically covers the subject matter of the additional claims in issue. *Plaintiff's Reply Brief* at 11. Defendant counters that the Act is not applicable because Customs' demand on plaintiff to fulfill its contractual obligation to pay the amount in question was protestable as a "charge" or "exaction" within the framework of 19 U.S.C. § 1514(a)(3) (1988),[4] in which case this Court's jurisdiction would be premised on 28 U.S.C. § 1581(a) (1982).[5]

■ Two prerequisites must be met before jurisdiction may be invoked under the All Writs Act: (1) there must be no jurisdictional statute specifically addressing the

2. Although there was originally some dispute as to who actually initiated the protest, plaintiff ultimately conceded that the protests were filed by its principal, Opera. *See Transcript of Oral Argument* at 19–22.

3. 28 U.S.C. § 1651(a) reads as follows:
  (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

4. 19 U.S.C. § 1514(a)(3) states in pertinent part:
  ... decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—
  . . . .
  (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
  . . . .

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

5. 28 U.S.C. § 1581(a) reads as follows:
  **Civil actions against the United States and agencies and officers thereof**
  (a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

subject matter of the claims at issue; and (2) the court must already have jurisdiction over the other issues of the action. *See Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985); *United States Alkali Export Ass'n v. United States*, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945); *Nakajima All Co. v. United States*, 12 CIT ——, 682 F.Supp. 52 (1988). Consequently, if, as the plaintiff asserts, the demand against the plaintiff's bond does not constitute a "charge" or "exaction" within the purview of section 1514(a)(3), then the first prerequisite of the All Writs Act is satisfied. Regarding the second prong, the plaintiff has already properly invoked the exclusive jurisdiction of this Court by filing a summons to a denied protest filed by its principal under 28 U.S.C. § 1581(a). *St. Paul Fire and Marine Ins. Co. v. United States*, 2 CIT 104, 525 F.Supp. 880 (1981). Therefore, the All Writs Act is applicable only if the demand against the plaintiff's bond is not a "charge" or "exaction."

■ Plaintiff argues that this case merely involves an assessment of ordinary customs duties, which does not constitute a "charge" or "exaction" within the meaning of section 1514(a)(3). Plaintiff submits that had the importer paid the duties, there would be no question that they would be treated as ordinary customs duties. Payment by the surety, plaintiff insists, does not "transform them into charges or exactions" within the purview of section 1514(a)(3). *St. Paul Fire and Marine Ins. Co. v. United States*, 1 CIT 283, 284–85, 1981 WL 2459 (1981).

Defendant concurs that the assessment of ordinary customs duties does not constitute an exaction but maintains that the essential inquiry is whether a demand for payment against plaintiff's bond is *protestable as a "charge or exaction" under section 1514(a)(3)*.

The terms "charges" and "exactions" "have been applied to actual assessments of specific sums of money (other than ordinary customs duties) on imported merchandise." *Alberta Gas Chemicals, Inc. v.*

*Blumenthal*, 82 Cust.Ct. 77, 82, C.D. 4792, 467 F.Supp. 1245, 1247 (1979); *see Puget Sound Freight Lines v. United States*, 19 Cust.Ct. 70, C.D. 1070 (1947), *aff'd*, 36 CCPA 70, C.A.D. 400, 173 F.2d 578 (1949); *Atlantic Transport Co. v. United States*, 5 Ct.Cust.App. 373, T.D. 34872 (1914).

A "charge" has been interpreted as an obligation or duty; a claim or encumbrance; a liability, an expense or the price of an object; an entry in an account of what's due from one party to another, 1 West's *Law & Commercial Dictionary in Five Languages* 237 (1985); West's *Legal Thesaurus and Dictionary* 127, (1985); *Webster's Third New Int'l Dictionary* 377 (1981); *Black's Law Dictionary* 211 (5th Ed.1979); whereas an "exaction" has been described as the wrongful demand for payment under color of official authority, where no payment is due; an unjust compulsory levy. *Webster's supra*, at 790; *Black's supra*, at 500. These sources indicate that a demand for payment under the surety bond may be characterized as an obligation or duty to pay and therefore could be regarded as a "charge". *See United States v. Bavarian Motors, Inc.*, 4 CIT 83 (1982); *United States v. Utex Int'l, Inc.*, 11 CIT 325, 659 F.Supp. 250 (1987), *rev'd on other grounds*, 857 F.2d 1408 (Fed.Cir.1988). Payment under the surety bond was made in fulfillment of the plaintiff's *contractual obligation*. Plaintiff was liable to Customs for payment of any liquidated entries upon importer's failure to do so. Hence, demand against the plaintiff's bond constitutes a "charge" under section 1514(a)(3).

Moreover, 19 U.S.C. § 1514(c)(2) (1988) states in pertinent part:

A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond. If another party has not filed a timely protest, the surety's protest shall certify that it is not being filed collusively to extend another authorized person's time to protest as specified in this subsection.

The legislative history of this section demonstrates that Congress intended this provision to "[permit] a surety to file a protest in its own name and [extend] the time within which it may file a protest." S.Rep. No. 96–249, 96th Cong., 2d Sess. 254, *reprinted in* 1979 U.S. Code Cong. & Admin. News 381, 640. Thus, section 1514(c)(2) further supports the Court's conclusion that a demand for payment against a surety's bond constitutes a protestable matter.

The All Writs Act is inapplicable to the case at bar because had the plaintiff protested Customs' demand for payment of liquidated duties in a timely manner, the court's jurisdiction would have been properly invoked under 19 U.S.C. § 1514(a)(3) and 28 U.S.C. § 1581(a). The All Writs Act is a residual source of authority and "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Corrections*, 474 U.S. at 43, 106 S.Ct. at 361. The Act cannot be applied simply because compliance with the statutory procedures are inconvenient or even less appropriate. *Id.*

*28 U.S.C. § 2638*

■ In the alternative, plaintiff asserts that jurisdiction is founded upon the denied protests which form the basis for the original complaint. Plaintiff relies on 28 U.S.C. § 2638 (1982), which provides that:

> In any civil action under section 515 of the Tariff Act of 1930 in which the denial, in whole or in part, of a protest is a precondition to the commencement of a civil action in the Court of International Trade, the court, by rule, may consider any new ground in support of the civil action if such new ground—

>> (1) applies to the same merchandise that was the subject of the protest; and

>> (2) is related to the same administrative decision listed in section 514 of the Tariff Act of 1930 that was contested in the protest.

The first prong is not in dispute. Whether the second prong has been satisfied is much less clear.

Plaintiff contends that the original denial of treatment under item 806.20, TSUS, constitutes a claim for the "classification and rate and amount of duties chargeable" under section 1514(a)(2).[6] "The issue is not whether the merchandise (or the repairs) should be valued at 50 [cents] a unit or $1.00 a unit; the issue is whether or not the imported merchandise satisfies the criteria for classification under 806.20." *Plaintiff's Supplemental Brief in Further Support of Motion to Amend* at 10. Plaintiff states that since the original claim under item 806.20, TSUS, is a claim against classification, and the new grounds seek to challenge the "classification, rate and amount of duties chargeable" by returning the rate and amount of duties chargeable to the levels under item 806.20, TSUS, the additional claims are properly within the jurisdiction of this Court. The government, on the other hand, asserts that the original protest claim for item 806.20, TSUS, contests an appraisement of the imported merchandise at full value. Any amendments to the original protest claim must, therefore, under 28 U.S.C. § 2638(2), be solely limited to issues of appraising the value of the imported articles.

The legislative history of section 2638 reveals that any newly raised ground must fall within the same category as the decision contested in the protest.

> For example, if the administrative protest is limited to an attack on 'the classification and rate and amount of duties chargeable,' (Section 514(a)(2)), plaintiff

---

**6.** 19 U.S.C. § 1514(a)(2) states:

... decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

....

(2) the classification and rate and amount of duties chargeable;

....

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

would not be able to amend its papers in the Customs Court so as to contest in that Court 'the appraised value of merchandise' (Section 514(a)(1)), an administrative decision which had not been contested in the protest.

H.R.Rep. No. 91–1067, 91st Cong., 2d Sess. 19, *reprinted in* 1970 U.S. Code Cong. & Admin. News 3188, 3205; *see also, Jacob Lunitz & Son v. United States*, 48 Cust.Ct. 155, 158, C.D. 2329 (1962); *International Grocery Co. v. United States*, 43 Cust.Ct. 422, Abs. 63573 (1959).

There is a dearth of caselaw on whether item 806.20, TSUS, sets the rate of duty of the imported merchandise (classification) or defines the method for ascertaining the dutiable value of the imported merchandise (appraisement). The little that exists clearly supports the government's interpretation of item 806.20, TSUS. In *Green Giant Co. v. United States*, 79 Cust.Ct. 61, C.D. 4715 (1977), the defendant contended that the court lacked jurisdiction to review plaintiff's claims under items 800.00, TSUS, and 807.00, TSUS, since these were classification provisions and plaintiff's protests were directed toward appraisement of the merchandise. The court firmly disagreed. "The mere fact that items contained in TSUS, schedule 8, are referred to as 'Special Classification Provisions' does not limit the provisions in schedule 8 to classification." *Id.* at 64. More importantly, the court noted that "[i]tems 806.20, 806.30 and 807.00, ... by the very nature of the language utilized therein, relate directly to *valuation* of merchandise claimed to be entitled to treatment as American goods returned." *Id.* (emphasis added). Moreover, headnote 2, which applies solely to provisions 806.20 and 806.30, contained in subpart B, part 1, schedule 8 of the Tariff Schedules of the United States, includes language referring to "the value of the repairs," "appraisement of the imported article," and "the duty upon the value of the change in condition." This language, similarly, indicates that item 806.20, TSUS, concerns an appraisement of the merchandise rather than a classification.

In the instant case, Customs classified Opera's merchandise under various TSUS items, including 383.90, 382.12, 382.81, 383.-72 and 382.63. The merchandise was then exported to Canada and reimported into the United States under item 806.20 as articles exported for repairs or alterations. The terms "repairs" and "alterations" have been interpreted as meaning changes, additions or other treatments which do not destroy the identity of the article exported or create a new and different article. *Baylis Bros. Co. v. United States*, 64 Cust.Ct. 256, 259 (1970), *aff'd*, 451 F.2d 643 (1971).

It is obvious that item 806.20, TSUS, is not a provision that classifies the identity, nature, or character of the subject merchandise for tariff purposes, but one that only assesses a duty upon the value of the repairs or alterations of previously classified merchandise. Consequently, claims based on a 806.20, TSUS, protest must be limited to those challenging the manner of appraisement.

*28 U.S.C. § 1581(i)*

Alternatively, the plaintiff contends that this dispute arises from an import transaction which is not subject to protest as a "charge" or "exaction" under section 1514(a)(3) and, therefore, 28 U.S.C. § 1581(i) is the proper jurisdictional statute.[7] Plaintiff asserts that this is "the precise sort of dispute which Congress intended to be resolved in the Court of International Trade." *Plaintiff's Reply Brief* at 22.

---

**7.** 28 U.S.C. § 1581(i) (1982) provides in pertinent part:

**Civil actions against the United States and agencies and officers thereof**

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

....

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

The legislative history indicates the purpose of section 1581(i) as follows:

[Section 1581(i) grants] the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade. This language made it clear that all suits of this type are properly commenced only in the Court of International Trade and not in a district court. Thus, the Committee did not intend to create any new causes of action, but merely to designate definitively the appropriate forum.

H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 33, *reprinted in* 1980 U.S. Code Cong. & Admin. News 3729, 3745.

Section 1581(i) begins with the language "[i]n addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h)," which has been interpreted to mean that subsection (i) cannot be used to *bypass administrative review by meaningful protest* and that subject matter jurisdiction exists only when the remedy under section 1581(a) is manifestly inadequate. *Lowa, Ltd. v. United States*, 5 CIT 81, 561 F.Supp. 441 (1983), *aff'd*, 724 F.2d 121 (Fed.Cir.1984); *United States v. Uniroyal, Inc.*, 69 CCPA 179, 687 F.2d 467 (1982). "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available...." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). Congress did not intend section 1581(i) to be used as a vehicle to circumvent the jurisdictional scheme by dispensing with the requirements of a denied protest where available.

*National Corn Growers Ass'n v. Baker*, 840 F.2d 1547 (Fed.Cir.1988); *Miller*, 824 F.2d 961. Therefore, the plaintiff's failure to utilize the protest procedure under section 1514(a)(3) in not challenging the appraisement precludes jurisdiction over the contract claims under section 1581(i).

In a previous case, *Old Republic Ins. Co. v. United States*, 10 CIT 589, 645 F.Supp. 943 (1986), the court found jurisdiction over a breach of surety bond claim. *Old Republic*, however, may be distinguished from the instant case in significant respects. There, the court held that a breach of contract claim fell within the purview of section 1581(i)(4) and was properly commenced in this Court. The court reasoned that:

The thrust of plaintiff's complaint is a challenge to the collection of duties from a surety on an entry in a situation which calls for the proper application of a customs regulation. Such a claim involves the administration and enforcement of the laws providing for the collection of duties, for revenue purposes or otherwise.

*Id.* at 598, 645 F.Supp. at 951. The case at bar similarly concerns a breach of surety bond claim which involves the administration and enforcement of Customs regulations. More specifically, plaintiff challenges the administration and enforcement of Customs regulations 19 C.F.R. § 141.90, § 141.103, § 141.64 and § 152.2, all of which are incorporated as terms of the surety bond contract and are for the benefit of the surety.[8] These regulations regarding the entry, classification and appraisement of merchandise are uniquely a concern of international trade law and involve the raising of revenue from imports. Thus, this contract claim is embraced within the jurisdictional grant to the Court of International Trade under section 1581(i)(4).

*Old Republic*, however, may be distinguished since the plaintiff surety filed a

---

**8.** 19 C.F.R. § 141.90, § 141.103, § 141.64 and § 152.2 (1989) respectively provide for: the notation of tariff classification and value appearing on invoices to be approved by the district director; the deposit of estimated duties in the amount deemed necessary by the district director; the review and correction of entry documentation to ensure indicated values are correct; and the prompt notification of the importer if the district director believes the entered rate or value of any merchandise is too low. These provisions are incorporated into the surety bond agreement by reference.

protest within ninety days of liquidation and, subsequently, wrote the Customs Service stating that the liquidation was a nullity due to Customs' failure to notify the surety of the extension of liquidation, as required under the provisions of 19 U.S.C. § 1504.[9] In other words, the original protest contested liquidation and the additional breach of surety bond claim challenged that protest. In the instant action, the original protest contested only Customs' decision to deny item 806.20, TSUS, treatment and assess full duties on the imported merchandise. The additional contract claims, however, challenge the "classification, rate and amount of duties chargeable." Consequently, employing the analysis under the previous section (28 U.S.C. § 2638), the Court of International Trade does not possess jurisdiction over the additional claims.

Furthermore, it is most significant, as the defendant points out, that in *Old Re-public* the issue of whether the charge against the surety's bond constituted a protestable decision under 19 U.S.C. § 1514(a)(3) was neither raised by the parties nor addressed by the court. Thus, the holding in *Old Republic* is neither inconsistent with the legislative history and caselaw construing section 1581(i), nor is it dispositive on the issues presented in the case at bar.

In view of the foregoing, the court concludes that the subject matter of the amended complaint is beyond its jurisdictional boundaries. As such, plaintiff's motion to amend its complaint must be denied.

---

**9.** 19 U.S.C. § 1504(c) (1988) requires that notice of suspension of liquidation be provided to the importer of record and to any authorized agent and surety.