**ST. PAUL FIRE & MARINE INSURANCE CO., Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–Appellee.**

**No. 90–1343.**

United States Court of Appeals, Federal Circuit.

March 26, 1992.

Edward M. Joffe, Sandler, Travis & Rosenberg, P.A., Miami, Fla., argued, for plaintiff-appellant. With him on the brief, was Gilbert Lee Sandler.

Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellee. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Susan Burnett Mansfield. Also on the brief, was Karen Binder, Atty., U.S. Customs Service, of counsel.

Before NIES, Chief Judge, NEWMAN and ARCHER, Circuit Judges.

NIES, Chief Judge.

St. Paul Fire & Marine Insurance Co. appeals from a decision by the United States Court of International Trade denying St. Paul's motion to amend its complaint to include claims nullifying St. Paul's obligations under its surety bond and seeking a refund of amounts St. Paul had paid for duties as surety for Opera Garments, Inc. The trial court denied the motion after determining that it lacked subject matter jurisdiction over the contract claims St. Paul sought to add. *St. Paul Fire & Marine Ins. Co. v. United States*, 729 F.Supp. 1371 (Ct.Int'l Trade 1990). We reverse.

## I.

### BACKGROUND

This case concerns the importation of wearing apparel consisting primarily of jackets or coats. The importer of record, Opera, brought the garments into the United States, exported them to Canada for alleged repair or alteration, and then allegedly brought the same garments back into the United States for sale. On re-entry of the garments, Opera sought treatment under item 806.20 of the Tariff Schedules of the United States (TSUS) which limits the

basis of the import duty on such articles to the value of the repairs or alterations. Customs, however, for some time had been investigating Opera's operations and had concluded that the coats exported to Canada were being sold there, and that in their place, Opera was bringing back more expensive coats, thus causing a loss of revenue to the United States. Customs denied Opera's protests for treatment under TSUS 806.20 and calculated the duty on the full net invoiced value of the merchandise. After Opera failed to pay the requested duty, the government demanded payment from St. Paul, Opera's surety. St. Paul promptly paid the amount due.

St. Paul's original complaint simply appealed the denial of Opera's protests for TSUS 806.20 treatment. About a year after this suit began, St. Paul states it learned through discovery about Customs' investigation of Opera. Then St. Paul in September of 1988 moved to amend its complaint[1] to seek nullification of its bond obligations by reason of the government's breach of duties to St. Paul in failing to disclose Customs' ongoing investigations into Opera's fraudulent conduct and in failing to require deposit of full duties from Opera upon entry of the merchandise. As a result of the government's misconduct, St. Paul claims it insured a risk it would not have otherwise insured and paid monies, required under the surety bond, it would not have otherwise paid.

The trial court denied St. Paul's motion to amend its complaint because the court concluded it had no jurisdiction over the new counts. Per the court, jurisdiction in the Court of International Trade would exist if St. Paul had protested the demand for payment under the bond and appealed the denial of such protest thereby establishing jurisdiction under 19 U.S.C. § 1514(a)(3) (1988)[2] and 28 U.S.C. § 1581(a)

---

1. For purposes of resolving this appeal, we will assume that St. Paul's allegations are true and that its motion to amend was made within a reasonable time.

2. 19 U.S.C. § 1514(a)(3) states, in pertinent part, that:

all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

\* \* \* \* \* \*

shall be final and conclusive upon all persons (including the United States and any officer

(1988).[3]

After the motion to amend its complaint was denied, St. Paul moved for a rehearing and sought dismissal of its original complaint. The trial court denied the motion for rehearing and dismissed the action, per St. Paul's request. St. Paul now appeals the trial court's denial of its motion to amend the complaint.

## II.

### ISSUES

1. Must St. Paul's appeal be dismissed because St. Paul requested the dismissal of its original complaint?

2. If St. Paul's appeal is properly before this court, was the trial court correct in determining that it lacked jurisdiction over the claims St. Paul seeks to add?

## III.

### APPEALABILITY

■ The Government asserts that since St. Paul voluntarily sought and obtained a dismissal of its action in the court below, no adverse judgment exists from which St. Paul could appeal, and that, therefore, this appeal is not properly before us. The Government is correct in that generally, "a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 680, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958); *United States v. Babbitt*, 104 U.S. (14 Otto) 767, 768, 26 L.Ed. 921 (1881); *see also* 5 J.W. Moore, *Moore's Federal Practice* ¶ 41.05[3] (2d ed. 1991). However, the Supreme Court, in *Procter & Gamble*, 356 U.S. at 680–81, 78 S.Ct. at 985, set out an exception to that rule. There, the Government as plaintiff was ordered to turn over the transcript of a grand jury proceeding. To avoid being charged with civil contempt, the Government requested that the district court's order be amended to provide that, if the transcript were not produced, its complaint would be dismissed. Because production was not made, an order of dismissal was entered and the government appealed to obtain a ruling on the order to produce. The Supreme Court noted that it was understandable why the Government sought to avoid any unseemly conflict with the district court, and stated, "[w]hen the Government proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review." *Id.* The Court then held that the government "did not consent to a judgment against [it], but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that [it] might come to this court without further delay." *Id.* (quoting *Thomsen v. Cayser*, 243 U.S. 66, 83, 37 S.Ct. 353, 358, 61 L.Ed. 597 (1917)).

Here, St. Paul sought dismissal of the original complaint only as an expedient to obtaining review of the denial of its motion to amend its complaint. As it admits, its complaint as filed "is no longer factually supportable based upon the newly-discovered evidence." St. Paul, by its request for dismissal, did not agree it was liable but only sought to avoid a trial on the merits of the existing count which otherwise would have been necessary in order to appeal the interlocutory order denying its motion to amend. While other procedures might have been followed, St. Paul's request for dismissal was not "voluntary" in the sense of the general rule that a party may not appeal a judgment to which it consented.

## IV.

### JURISDICTION OF THE COURT OF INTERNATIONAL TRADE

St. Paul advances a number of alternative statutory bases on which jurisdiction

thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

3. 28 U.S.C. § 1581(a) states as follows:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

could be found in the trial court over St. Paul's contract claims, including 28 U.S.C. § 1581(i) (1988).[4] This section provides, in pertinent part, as follows:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section ... the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States ... that arises out of any law of the United States [governing import transactions].

*Id.* St. Paul argues that the new claims could not be brought under 28 U.S.C. § 1581(a), or any other subsection of § 1581, and fall within the parameters of the above subsection. For the following reasons, we conclude the trial court had jurisdiction under section 1581(i).

The trial court determined that, while the new claims fell within the scope of 1581(i), that section could not be invoked because St. Paul could have filed an administrative protest to Customs' demand for payment on St. Paul's bond.[5] Had St. Paul done so, its claims could then have been brought under section 1581(a) and, therefore, per the court, section 1581(i) is not available as a basis for jurisdiction. Because St. Paul filed no protest, the court also concluded that the foundation for bringing a claim under section 1581(a) was lacking and that, therefore, the counts could not be added.

■ The trial court is clearly correct that section 1581(i) cannot be used to bypass the requirement for administrative protest. The statute plainly states that its jurisdictional grant is "[i]n addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section...." 28 U.S.C. § 1581(i). More-over, if the grant of jurisdiction in section 1581(i) were interpreted to overlap with the grant in section 1581(a), litigants could easily circumvent the jurisdictional scheme of review. To illustrate, a protest must be filed within 90 days of the disputed administrative decision, 19 U.S.C. § 1514(c), whereas a suit under section 1581(i) must be filed within two years of the date a claim accrues. 28 U.S.C. § 2636(h) (1988). Thus, if a suit could be maintained on a protestable decision under both sections 1581(a) and 1581(i), a party could circumvent the time requirements associated with a protestable decision and completely evade the administrative review process. Rejecting this interpretation of section 1581, this court held in *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988): "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of section 1581 is or could have been available...." *Accord National Corn Grower's Ass'n v. Baker*, 840 F.2d 1547, 1556–59 (Fed.Cir. 1988).

■ There is also no question that a surety may protest the government's demand for payment on its bond provided it files such protest within 90 days of the demand. 19 U.S.C. § 1514(c). Clearly, the alleged facts of St. Paul's new claims do not fit within that administrative scheme. A surety must have some grounds for objecting to the government's demand. In this case, St. Paul alleges it did not know of the now-asserted legal basis for protesting the government demand within the time frame set by the statute for a protest. St. Paul alleges that it became aware of its contract defenses only in 1987 when Cus-

---

4. For instance, St. Paul argues that the new claims are additional grounds in support of the original protest and, that under 28 U.S.C. § 2638 (1988), a separate protest is not required to add these claims to the pending suit. However, we agree with the trial court's conclusion that St. Paul's new claims fail to meet the requirements of section 2638.

St. Paul also asserts jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a) (1988). Under that Act, a federal court may issue orders "in aid of" its jurisdiction. That is, where a court has jurisdiction, it may in appropriate circum-stances issue a "writ" to an entity in order to exercise or preserve its jurisdiction. St. Paul did not seek any "writ" from the trial court or, indeed, from this court. Thus, both parties' arguments over whether the All Writs Act can fill in gaps in a court's jurisdiction, as well as the trial court's analysis on this issue, appear off course.

5. The trial court held that the demand on the bond was protestable as a "charge" within the meaning of 19 U.S.C. § 1514(a)(3).

toms finally disclosed its long continuing investigation of Opera. If we accept those allegations as true, which we must for purposes of the motion *sub judice,* we cannot agree that the administrative procedures regarding protests must be held to bar the assertion of a later discovered claim.

We note that this is not a case where the government argues suit was brought in the wrong court. Rather, the government argues that St. Paul's claims are barred because it failed to file a timely protest. However, the government admits that if St. Paul had not filed a protest and had refused to comply with the government's demand for payment, and the government had proceeded to sue St. Paul, no protest would have been required to assert contractual defenses against the government's claim. *See United States v. Utex Int'l,* 857 F.2d 1408, 1413–14 (Fed.Cir.1988). Thus, the failure of a surety to file a protest against payment on its bond does not in all cases absolve the government of liability.

Moreover, even if no protest to liquidation had been made by Opera, St. Paul's claims would not have been subsumed by liquidation of the entry. The claims are personal to St. Paul and are separate and distinct from Opera's protest. *Id.* The justiciability of St. Paul's claims is not dependent on Opera's protest, nor is it prejudiced by not being part of that protest. One way to clear away the fog is simply to look at the contract claims only—that is, apart from the appeal of Opera's protest. If St. Paul had a right to sue on such contract claims in September of 1988 without a prior protest, it should have been allowed to amend its complaint at that time.

The essence of the new counts is that the government knew that Opera was evading customs laws at the time St. Paul became surety, that the government knew St. Paul did not know the facts, that the government failed to disclose the facts to St. Paul or to obtain the deposit of full duties from Opera, and that, therefore, the government

breached contractual obligations to St. Paul. Assuming the basis for St. Paul's charges of government misconduct was not known and could not reasonably have been known by St. Paul prior to discovery in the appealed protest, the claims did not arise until 1987 when St. Paul was informed of the government's investigation. *Chevron U.S.A., Inc. v. United States,* 923 F.2d 830, 834 (Fed.Cir.1991). Under section 1581(i) a claim must be brought within two years of when the claim first accrues. *Old Republic Ins. v. United States,* 645 F.Supp. 943, 952 (Ct.Int'l Trade 1986) (citing 28 U.S.C. § 2636(h)). The precedent of this court is well established that a claim does not accrue until the aggrieved party reasonably should have known about the existence of the claim. *Chevron,* 923 F.2d at 834; *accord Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir.1988); *Welcker v. United States,* 752 F.2d 1577, 1580–81 (Fed.Cir.1985); *Braude v. United States,* 585 F.2d 1049, 1051–53, 218 Ct.Cl. 270 (1978); *Japanese War Notes Claimants Ass'n of the Philippines v. United States,* 373 F.2d 356, 359, 178 Ct.Cl. 630, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

Even though we agree with the trial court that the government's demand against a surety bond may constitute a "charge" under section 1514(a)(3) which typically may have to be protested, no protest is required here. No administrative procedure exists to cover the unusual situation where a claim does not accrue until after the protest period has expired. Thus, allowing suit on the new claims does not circumvent the required administrative review process.

Inasmuch as the claims St. Paul seeks to add fall within the scope of section 1581(i), and its claims were not in this case protestable, we conclude that section 1581(i) provides a basis for the trial court's jurisdiction. We express no opinion on the factual issue of when St. Paul knew or should have known of the existence of its claims.

## V.

## CONCLUSION

For the foregoing reasons, the Court of International Trade's dismissal of St. Paul's complaint and denial of St. Paul's motion to amend its complaint are REVERSED.