LOURIE, Circuit Judge,
dissenting.
Because I conclude that Hartford had sufficient information on hand to put it on *1376 notice as to any potential claim that it may have had against Customs regarding the “Hubei entries” within the administrative protest period allowed under 19 U.S.C. § 1514, I respectfully dissent. The issue here is not simply when Hartford became aware of the basis for its claim, but rather when it should have reasonably become aware of the claim. See St. Paul Fire & Marine Ins. Co. v. United States, 959 F.2d 960, 964 (Fed.Cir.1992) (a claim accrues when the aggrieved party “reasonably should have known” of the existence of a claim); see also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed.Cir.1988) (a claim accrues when the aggrieved party “knew or should have known” that the claim existed). The question is whether Hartford reasonably should have known, based upon its knowledge of the criminal proceedings, that a full review of the proceedings could reveal information about the nature of those proceedings, including information that may have been relevant to the Hubei entries. I believe the answer is clearly yes.
Hartford acted as a surety for Sunline, an importer of frozen crawfish from China. During July and August 2003, Sunline executed eight bonds, insured by Hartford, on entries of crawfish imported into the United States. In November 2003, just three months after the bonds were issued, two of Sunline’s officers, Shen and Lin, were indicted for violating U.S. importation laws. These indictments were clearly public record. Then, in May 2005, Hartford learned from a third party of the Shen criminal case. It responded by taking no action on the matter for four months, after which it sought additional information on the Shen case. Hartford then found it reasonable to probe further into the criminal indictment of one of the officers of an importer for which it was acting as a surety.
Hartford argues, however, and the majority agrees, that it was not unreasonable to wait for four months to do so. I respectfully disagree. It appears that the importer had only two employees here in the United States. Oral Arg. at 16:00-23, available at http://www.cafc.uscourts.gov/ oral-argument-recordings/2010-1198/all. They were both indicted, not for some unrelated crimes, but for violating U.S. importation laws, i.e., falsely documenting imports of crawfish from China — the same product imported from the same country as the entries at issue here. ' On learning that information, no reasonable surety who insures identical imports by the exact same importer would wait several months before taking any action.
Likewise, Hartford took no action following Customs’ demand on June 22, 2005 for Hartford to pay duties owed on the Hubei entries. A reasonable surety, faced with an obligation to pay, would have taken some action. Hartford simply let the protest period pass without paying or protesting the demand. If anything, Hartford’s nonpayment on the entries it insured indicates that it was aware of problems at Sunline. After all, it had made Freedom of Information Act (“FOIA”) requests on other Sunline imports well before Customs made its demand. Yet, the majority passes over those facts to conclude that a duty to investigate was not triggered during the entire protest period either. One question that neither Hartford nor the majority is able to answer is what actually motivated Hartford to conduct the Shen case investigation four months later, even though none of the relevant circumstances had changed and no additional information had become available to Hartford. The only reasonable explanation is Hartford’s lack of diligence earlier.
*1377 The majority relies on our decision in St. Paul to decide that Hartford’s claim did not accrue until it actually made a further investigation into the Shen case file and, as a matter of fact, found nothing specific to the Hubei entries. In St. Paul, however, the appellant became aware of its contract defenses only after Customs disclosed a relevant Customs’ internal investigation of the importer, and hence could not have been reasonably expected to know of its claim and therefore protest any earlier. 959 F.2d at 963-64. The facts here are very different. Sunline’s officers were criminally indicted, publicly, and Hartford was directly informed about the charges by a third party. Hartford “should have reasonably known” of any claim that it had back in May 2005; it was simply negligent in taking any action on the knowledge. The Court of International Trade was therefore correct in holding that the information that Hartford received was sufficient to trigger a reasonable surety to action and that Hartford should have exercised more diligence in the matter once it learned of the indictments.
By finding jurisdiction under 28 U.S.C. § 1581 (i), the majority excuses Hartford’s failure to act in a reasonably prompt manner and thereby grants Hartford a second bite at the apple that it does not deserve. In doing so, it inadvisedly expands the scope of section 1581® to allow claims that could and should be brought under section 1581(a). St. Paul, 959 F.2d at 963 (“[I]f a suit could be maintained on a protestable decision under both sections 1581(a) and 1581®, a party could circumvent the time requirements associated with a protestable decision and completely evade the administrative review process.”). I therefore respectfully dissent. I would affirm the lower court’s well-reasoned decision finding no jurisdiction in this case.